ESTATE OF SARAH CAPLAN, DECEASED, YETTA C. LEVIN, INDEPENDENT EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3634–62. Filed May 28, 1964.

*Neil J. O'Brien*, *Morris I. Jaffe*, and *Albert A. Helfand*, for the petitioner.

*Harold Rogers*, for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in the estate tax of petitioner in the amount of $50,546.90. The sole issue is whether the amount of $125,584.90 is deductible by petitioner as a debt under section 2053 of the Internal Revenue Code of 1954.

## FINDINGS OF FACT

The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Sarah Caplan (hereinafter referred to as decedent) died on September 22, 1958, a resident of Dallas, Tex. The Federal estate tax return for the estate of Sarah Caplan (hereinafter referred to as petitioner) was filed with the district director of internal revenue at Dallas, Tex., by Yetta C. Levin, decedent's daughter, on December 22, 1959, in her capacity as independent executrix. On March 16, 1961, Yetta paid the comptroller of public accounts of the State of Texas the sum of $8,793.82 as inheritance taxes in respect of property included in the gross estate of petitioner.

Prior to his death on May 24, 1950, decedent was married to Dave Caplan. All of the assets owned by Dave on the date of his death were community properties, one-half of which passed to decedent by rule of law. Dave died testate, and his one-half of these community properties passed by his will executed on March 14, 1950, with the exception of certain specific bequests, to a testamentary trust for the benefit of decedent, Yetta Levin (Dave and decedent's only child), and Yetta's children. The will named Herschel Jaffe, Paul Levin (Yetta's husband), and the Republic National Bank of Dallas as trustees. Under the terms of the will, the "entire net income" from the trust was to be paid to decedent during her lifetime and thereafter to Yetta and her children,[1] or their children, per stirpes, during their lives.[2] The trustees were given discretion to "determine what part of any amounts received in connection with oil, gas and mineral properties is principal and what part is income." Morris I. Jaffe, Herschel's brother, was named as attorney to probate the will. Yetta was appointed independent executrix of the estate.

Prior to his death Dave was associated with Jaffe[3] and Beren in the operation of oil and gas properties under the trade name of Beren-Jaffe-Caplan. Dave was associated with Jaffe and Beren in a corporation known as Spandsco Oil and Royalty Co. in which he owned 40 shares and in partnerships known as Advance Oil Co. and Brandor Petroleum Co.[4] in which he owned respectively a 30 percent and $\frac{7}{30}$ interest. The income from Dave's interest in the Beren-

---

[1] Except for a specific monthly bequest to decedent's sister for life conditioned upon her having resided with decedent until the latter's death.

[2] The trust was not to continue beyond the limits of the rule against perpetuities and was to terminate if none of Yetta's children were alive at the time of her death. Upon the trust's termination, the trust corpus was to be distributed to Dave's heirs at law upon the failure of which it was devised to Hertze Chaikel Talmud Tora of Dallas.

[3] The evidence is conflicting as to whether the person in question was Herschel Jaffe or Herschel's father.

[4] At the date of his death Dave also owned stock in a corporation known as Standard Pipe and Supply Co., but the evidence does not show whether Beren and Jaffe held stock in this corporation.

Jaffe-Caplan properties, which were held in community by Dave and decedent, was deposited in a Spandsco corporation bank account. An account in Dave's name was kept on the Spandsco books by Ola E. Davis, who kept the books regarding all the Beren-Jaffe-Caplan interests, to which was credited the income deposited to Dave's credit in the corporation account and to which was debited disbursements to Dave and his pro rata share of the Beren-Jaffe-Caplan operating expenses.

Herschel Jaffe has been active in the operation of the Beren-Jaffe-Caplan oil and gas properties since approximately 1934.[5] Morris and Herschel are nephews of decedent. Subsequent to Dave's death Herschel managed the properties representing the Beren-Jaffe-Caplan interests which previously had been held in community by Dave and decedent. After Dave's death the division orders covering these properties were changed to make the amounts due thereunder payable one-half to decedent and one-half to Dave's estate. Following Dave's death and until December 31, 1952, the income from the interests of Dave's estate and decedent in the Beren-Jaffe-Caplan properties was deposited in the Spandsco bank account. The account on Spandsco's books was changed to the name of Dave's estate and decedent, but credits and debits were made in the manner in which they were made prior to Dave's death, with no current segregation of amounts belonging to Dave's estate and to decedent. The following amounts represent total receipts credited to this account on Spandsco's books, the one-half of these receipts belonging to decedent, and the disbursements to decedent debited to this account during the period June 1, 1950, to December 31, 1950, and the years 1951 and 1952:

| Year | Receipts | Decedent's interest | Disbursements |
|---|---|---|---|
| June 1, to Dec. 31, 1950 | $58,020.27 | $29,010.14 | $43,182.92 |
| 1951 | 92,152.43 | 46,076.22 | 81,714.43 |
| 1952 | 122,657.23 | 61,328.64 | 109,954.32 |

No accounting has been made between amounts belonging to decedent and to Dave's estate which were deposited in the Spandsco bank account from the date of Dave's death through December 31, 1952.

Sometime in the latter part of 1952 Spandsco corporation was liquidated. Beginning in February 1953, the receipts from the oil and gas properties belonging one-half to decedent and one-half to Dave's estate were deposited in an account at Republic National Bank entitled Sarah Caplan (Special Account). Decedent executed a power of attorney to H. Jaffe (Herschel) to draw upon this account.

---

[5] The evidence does not establish what, if any, interest Herschel held in the Beren-Jaffe-Caplan properties.

Herschel drew money from this account for decedent upon her request. The only checks written on the account were signed by H. Jaffe. On the date of decedent's death the balance in the account was $40,304.26. This amount was reported on petitioner's Federal estate tax return as an asset.

During the period March 10, 1953, through September 30, 1958, Ola kept a ledger account for decedent entitled Estate of D. Caplan. She kept a similar account for decedent's estate from October 1, 1958, through December 31, 1962. These accounts were credited with Dave's estate income from the Beren-Jaffe-Caplan properties representing one-half of the amounts deposited in the Sarah Caplan (Special Account) and debited with the Beren-Jaffe-Caplan operating expenses (one-half), taxes and charitable contributions paid from that account on behalf of Dave's estate, and the net taxable income reported on the fiduciary income tax returns filed for Dave's estate for the taxable years 1956 and 1957 and the taxable period January 1, 1958, through September 30, 1958. Identically reciprocal entries were made on an account kept for Dave's estate entitled Sarah Caplan for the period March 10, 1953, through December 31, 1962. These accounts were adjusted on December 31, 1961, by a credit in the amount of $29,494.55, the net taxable income reported on the fiduciary return filed for Dave's estate for the taxable year 1955. A debit entry entitled Dallas Federal Savings Bonds was made on June 30, 1960, in the amount of $15,292.50. The following represents a summary of the entries made on the Sarah Caplan account kept for Dave's estate:

| Period ended— | Debits | Credits | Cumulative balance |
|---|---|---|---|
| Dec. 31, 1953 | $62,199.28 | $36,205.82 | $25,993.46 |
| Dec. 31, 1954 | 59,875.95 | 26,190.82 | 59,678.59 |
| Dec. 31, 1955 | 77,989.28 | 28,808.14 | 108,809.73 |
| Dec. 31, 1956 | 59,437.04 | 42,122.41 | 126,124.36 |
| Dec. 31, 1957 | 61,729.10 | 44,406.17 | 143,447.29 |
| Sept. 22, 1958 | 30,189.51 | 20,057.35 | 153,579.45 |
| Dec. 31, 1958 | 14,712.10 | 4,769.76 | 134,027.24 |
| Dec. 31, 1959 | 29,310.81 | 10,702.28 | 152,635.77 |
| Dec. 31, 1960 | 12,361.30 | 56,266.70 | 108,730.37 |
| Dec. 31, 1961 | 24,400.20 | 20,254.58 | 112,875.99 |
| Dec. 31, 1962 | 22,744.07 | 32,707.57 | 102,912.49 |

The adjustment made to this account on December 31, 1961, for Dave's estate 1955 taxable income in the amount of $29,494.55 is reflected in this summary in the period October 1, 1958, through December 31, 1958.

The total cash on hand in Dave's estate at the date of his death was $76,242.78, reported on Schedule C of the Federal estate tax return filed on August 24, 1951, by Yetta as independent executrix of the estate, as Dave's community one-half of amounts in checking accounts in the Republic National Bank of Dallas in Dave's and decedent's names, respectively, in savings accounts in the Republic National Bank

in decedent's name and jointly in Dave's and decedent's names, in savings accounts in the Mercantile National Bank at Dallas in decedent's name, and in savings accounts in the Dallas Federal Savings and Loan Association in Dave's and decedent's names and in Dave's and decedent's names as joint tenants.

The Federal estate tax liability of $80,320.58 declared on the return was paid on August 24, 1951, from the following sources:

| Source | Amount |
|---|---|
| Cashier's check—Mercantile National Bank, representing withdrawals from the account shown in Schedule C of the return as Mercantile National Bank savings account | $35, 695. 51 |
| Cashier's check—Republic National Bank, representing withdrawals from the account shown in Schedule C of the return as Republic National Bank savings account | 5, 000. 00 |
| Three checks of Dallas Federal Savings & Loan Association, representing withdrawals from the Dallas Federal Savings & Loan Association accounts shown in Schedule C of the return | 18, 164. 73 |
| Check signed by decedent and drawn on her account at Republic National Bank | 21, 460. 34 |
| | 80, 320. 58 |

An additional Federal estate tax liability of Dave's estate determined by respondent in the amount of $31,366.69 was paid on January 30, 1953, by a check drawn on the Republic National Bank signed by decedent. A further amount of $2,793.45, representing interest and tax, was paid on December 31, 1953. At the date of decedent's death the cash on hand in Dave's estate was in the accounts and amounts as follows:

| Account | Balance |
|---|---|
| Dallas Federal Savings | $8, 204. 95 |
| Republic National Bank | 1, 894. 65 |
| | 10, 099. 60 |

Herschel and Morris handled most of the affairs of Dave's estate. Yetta performed few functions as independent executrix beyond executing papers requiring her signature. There was no formal cessation of the independent administration of Dave's estate. The fiduciary income tax returns filed for Dave's estate for the years 1950 through 1957 were filed as estate returns and for the year 1958 as a trust return. The Republic National Bank signed certain lease assignments in reference to the properties subject to Dave's will as trustee shortly after Dave's death. Paul Levin signed some papers in reference to these properties. On December 9, 1958, Morris addressed a letter to the trust department of the Republic National Bank in which he stated in part as follows:

As I told you on the telephone, there is no longer any reason for keeping the Dave Caplan Estate open. Yetta C. Levin has been acting as Independent

Executrix of such Estate. She is likewise the Independent Executrix in the Sarah Caplan Estate.

Under the former probate rules, there was no method for closing an Estate when the same was being handled by an Independent Executor. Under the new Probate Code, there are certain steps the Independent Executor can take preparatory to closing the Estate but the Code is very indefinite in its language. Provision is made for filing of an affidavit and final accounting by an Independent Executor. The County Judge will not approve any final accounting filed by an Executor because the Code did not give sufficient instructions to the County Judge in such matters. Therefore, there is no real way even at this time to close an Independent Executorship.

In order to clarify matters in the Dave Caplan Estate, I suggest that the Independent Executrix sign a simple instrument acknowledging termination of her services as Executrix and turning over to the Trustees all assets in the Estate. As you know, all the business matters in connection with the above Estates are handled through the office in which Mr. Caplan was involved during his life. These matters are looked after by one of the Trustees under each of the above wills, Herschel H. Jaffe, at 1920 Republic National Bank Building. We want to make certain that even after the Trustees take over, all business matters are still handled in the same manner without any undue complications. There could not possibly be any risk or danger to any Trustee or Executor because all funds are channeled through the above office and the net funds, over and above expenses and costs, have been distributed to the proper beneficiary. While Mrs. Caplan was alive, she received the income from the Dave Caplan Estate under the terms of his will.

It will be some time before the Sarah Caplan Estate is closed and the Independent Executrix will be acting during that time. Therefore, this will be handled in the same manner as the Dave Caplan Estate was formerly handled.

On March 11, 1959, the Republic National Bank executed a formal instrument, resigning as trustee of the testamentary trust under both Dave's and decedent's will.

Decedent's will was executed on March 14, 1950, and was substantially similar to Dave's will. The residue of her estate remaining after certain specific bequests was devised to Paul Levin, Herschel Jaffe, and the Republic National Bank as trustees for the benefit of Dave, who was to receive the income for life, and Yetta and her children, who were to receive the income for life after Dave's death. Morris was named as attorney to probate the will.

On its Federal estate tax return petitioner claimed as a debt owing to Dave's estate the amount of $125,584.90, allegedly representing the amount of the cumulative balance on Dave's estate Sarah Caplan account on the date of decedent's death, minus a credit to that account made on December 31, 1961, in the amount of $29,494.55, representing the net taxable income of Dave's estate in 1955. Respondent disallowed the deduction of this amount, explaining in his notice of deficiency:

(e) In the absence of evidence substantiating an obligation on the part of Sarah Caplan to the Estate of Dave Caplan, it is determined that the amount of $125,584.90, claimed as a deduction for an obligation to the Estate of Dave

Caplan, does not constitute an allowable deduction on the Estate Tax Return under the provisions of existing internal revenue laws. The deduction is disallowed and the taxable estate is increased accordingly.

The amount of $125,584.90, claimed by petitioner as an amount owing by petitioner to Dave's estate, was not a legally enforceable obligation.

### OPINION

The sole issue is whether, within the meaning of section 2053 of the Internal Revenue Code of 1954,[6] decedent at the date of her death owed the amount of $125,584.90 to Dave's estate.

Respondent makes four alternative contentions. He cites as his primary contention the proposition that the trust under Dave's will never came into existence, that the trustees named in the will therefore had no authority to designate a part of the oil and gas receipts of Dave's estate as principal, and that all of the amounts deposited in the Sarah Caplan (Special Account), upon which decedent had the right to draw, therefore constituted a distribution to decedent. In the alternative, respondent contends that if the trust came into existence, the trustees in effect exercised their discretion to name all of the receipts as income by depositing all such receipts in the Sarah Caplan (Special Account). The third contention made by respondent is that the amount of alleged overdrafts made by decedent was not a bona fide debt within the meaning of section 2053. Fourthly, respondent claims setoffs against the alleged indebtedness for the net taxable income of Dave's estate reported on the fiduciary returns for 1953 and 1954 and for amounts allegedly paid by decedent from her one-half of community property in satisfying obligations of Dave's estate.

Petitioner maintains that the trust under Dave's will came into existence immediately after Dave's death by virtue of the fact that Herschel, one of the trustees named in the will, managed the properties in Dave's estate after Dave's death. Herschel testified that he considered himself acting as trustee of the properties in Dave's estate. Petitioner further maintains that Herschel, pursuant to the authority granted the testamentary trustees under the will, designated that part of the receipts from the oil, gas, and mineral properties in Dave's estate which was attributable to depreciation and depletion of the properties as principal and correspondingly designated the net taxable income of Dave's estate as income distributable to decedent under the terms of the will. Herschel and Albert A. Helfand (petitioner's accountant) each testified that upon Herschel's direction Helfand inquired of Morris what part of the income of Dave's estate was distributable to decedent so that he could show this amount on Dave's estate and decedent's reciprocal accounts and was informed by Morris that the

---

[6] Except as otherwise indicated, all section references hereinafter will refer to the Internal Revenue Code of 1954.

net taxable income of Dave's estate was distributable to decedent. Morris testified that he advised Herschel that the receipts from Dave's estate oil, gas, and mineral properties which were attributable to depreciation and depletion of the properties should be treated as principal of Dave's estate. Petitioner contends, therefore, that since receipts from Dave's estate oil, gas, and mineral properties attributable to depreciation and depletion were designated as principal by the trustees of the trust under Dave's will pursuant to power granted by the will, any amount received by decedent from the Sarah Caplan (Special Account) which exceeded her one-half of the income deposited to that account plus the net taxable income of Dave's estate represented the principal of Dave's estate to which decedent was not entitled and therefore constituted a debt owing by decedent to Dave's estate. Petitioner maintains that the reciprocal ledger accounts kept for decedent and Dave's estate after February 1953 reflect the amount of this debt.

The Estate of D. Caplan account, kept for decedent from February 1953 until her death, was credited with the one-half of the income deposited in the Sarah Caplan (Special Account) which belonged to Dave's estate and was debited with the expenditures made from that account on behalf of Dave's estate and the net taxable income reported on the fiduciary income tax returns filed for Dave's estate for the taxable years 1956 and 1957 and the taxable period January 1, 1958, through September 30, 1958. The Sarah Caplan account kept for Dave's estate was debited with the income of Dave's estate deposited in the Sarah Caplan (Special Account) and credited with expenditures from that account on behalf of Dave's estate and Dave's estate net taxable income reported for the taxable years 1956, 1957, and January 1, 1958, through September 30, 1958. Thus, the cumulative balances in these reciprocal accounts indicate the amount ($153,579.45) by which, on the date of decedent's death, Dave's estate one-half of the income deposited in the Sarah Caplan (Special Account) exceeded the expenditures from that account on behalf of Dave's estate and the net taxable income of the estate reported on the fiduciary returns for the taxable years 1956, 1957, and January 1, 1958, through September 30, 1958. This amount is shown on decedent's books as a credit and on Dave's estate books as a debit. On December 31, 1961, these accounts were adjusted by a credit of $29,494.55, the amount of the net taxable income reported on the fiduciary return filed for Dave's estate for 1955. Petitioner maintains that the $125,584.90, deducted on its estate tax return as a debt, represented the $153,579.45 cumulative balance in Dave's estate and decedent's reciprocal accounts as of decedent's death minus an adjustment for the $29,494.55 [7] net taxable income of Dave's estate for 1955.

---

[7] The discrepancy is not explained.

In the absence of any State court adjudication of the validity of the claim, we consider it on its merits. Whether or not decedent in fact received amounts of the income of Dave's estate to which she was not entitled, the evidence presented is insufficient to establish that the alleged overdrafts constituted a legally enforceable claim against decedent's estate. There is no written evidence of a promise by decedent to repay the amounts of the alleged indebtedness, and an agreement to repay cannot be implied from decedent's action in accepting the amounts since the evidence does not show that decedent knew these amounts were not allegedly her own. Herschel testified that he managed the affairs concerning both Dave's estate and decedent's interests in the Beren-Jaffe-Caplan properties, including depositing the income from these properties in the Sarah Caplan (Special Account). He further testified that decedent handled none of the affairs of these properties, seldom left her rural home to come into town, and requested money from him at periodic intervals by telephone. These requests for money were fulfilled by checks drawn upon the Sarah Caplan (Special Account) by Herschel and were never denied. There is no evidence that decedent was ever informed by Herschel, or otherwise knew, that she was receiving income from Dave's estate to which she allegedly had no right. Although decedent must have known the provisions of Dave's will, there is no evidence that she knew that the alleged designation of part of the oil, gas, and mineral receipts of Dave's estate as principal had been made or the amount thereof. Furthermore, the evidence does not show that decedent had notice that any of the amounts standing in the Sarah Caplan (Special Account) upon which she had the right to draw were not her property or that she ever asked to receive amounts from Dave's estate to which she was not entitled. In the absence of an express or implied promise to repay, decedent was under no legal obligation to reimburse the amounts received by her which allegedly represented the principal of Dave's estate, and such amounts do not constitute a claim against her estate deductible under section 2053. *Glascock* v. *Commissioner*, 104 F. 2d 475 (C.A. 4), affirming a Memorandum Opinion of this Court; *First-Mechanics Nat. Bank* v. *Commissioner*, 117 F. 2d 127 (C.A. 3), affirming 40 B.T.A. 876. See also, *Estate of Carolyn J. Clement*, 13 T.C. 19, holding for petitioner, in which the Court found as a fact that the amounts in issue were loans and that decedent intended to repay such amounts.

Since it is agreed that petitioner is entitled to a credit for the payment of $8,793.82 as inheritance taxes to the comptroller of public accounts of the State of Texas on March 16, 1961,

*Decision will be entered under Rule 50.*