Yetta C. LEVIN, Independent Executrix of the Estate of Sarah Caplan, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 22159.

United States Court of Appeals
Fifth Circuit.

Feb. 4, 1966.

As Amended on Denial of Rehearing
March 29, 1966.

Neil J. O'Brien, Dallas, Tex., Wynne, Jaffe & Tinsley, Dallas, Tex., for petitioner.

Sheldon S. Cohen, Chief Counsel, I. R. S., Charles Owen Johnson, Atty., I. R. S., Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Mark Rothman, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before JONES, Senior Judge,* and GEWIN and BELL, Circuit Judges.

JONES, Senior Judge.

The Tax Court of the United States, in a decision dated July 23, 1964, held there was a $41,753.08 deficiency in the estate tax filed by petitioner, Yetta C. Levin, for the estate of her deceased mother, Sarah Caplan. In so doing the Tax Court upheld a determination of the Commissioner of Internal Revenue that an alleged debt owed by the estate to the testamentary trust of Dave Caplan, the husband of Sarah, was legally unenforceable and so nondeductible on the estate tax return. The alleged debt was valued at $125,584.90. Petitioner seeks reversal of the decision of the Tax Court.

The facts involved are discussed fully in the lower court's opinion. 42 T.C. 446. In brief, petitioner claims that loans totaling $125,584.90 were made to her mother, Sarah Caplan, from early 1953 until Sarah's death in 1958, from the corpus of Dave Caplan's testamentary trust. Sarah was the income beneficiary of her husband's trust and she received from the trustee, her nephew,[1] all the trust income including depreciation and depletion allowances. The question is whether these allowances were a part of trust corpus and so not properly distributable to Sarah as income, or income and therefore distributable. If they were the latter then there is no debt owed the trust and the Tax Court should be affirmed.[2]

The question presented is somewhat complicated by the close family ties that exist between most of the parties involved in the Caplan affairs. Petitioner, the sole child of Dave and Sarah, and her children are the beneficiaries of the trusts of both Dave and Sarah. Therefore, there is no desire on the part of the beneficiaries of Dave's trust to enforce the alleged debt. Whether the debt is enforceable or not is of interest to the parties only insofar as calculating the tax on Sarah's estate is concerned.

Prior to Dave's death in 1950 he was associated with Herschel Jaffe (the trustee of Dave's testamentary trust) and one other person in the operation of oil and gas properties. The income from Dave's interest, which was held in community with his wife, was deposited in a small corporation known as Spandsco Oil and Royalty Company (hereinafter Spandsco). The bookkeeper for Spandsco, who was also bookkeeper for all the Caplan enterprises and for the estates and trusts involved herein, kept account of all receipts and withdrawals. After Dave's death, Herschel Jaffe continued to manage these oil properties, which then belonged one-half to Sarah by rule of law (community property) and one-half to Dave's testamentary trust. Herschel continued to deposit all the revenues

---

* Of the United States Court of Claims, sitting by designation.

1. Dave's will named Herschel Jaffe (nephew), Paul Levin (son-in-law), and the Republic National Bank of Dallas as trustees. The affairs of Dave's estate and trust, however, were handled almost entirely by Herschel and Morris Jaffe.

2. The Internal Revenue Code of 1954, 26 U.S.C. § 2053 (1958), provides for a deduction for debts of the estate in determining the estate tax, as follows:
"(a) General Rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
\* \* \* \* \*
"(3) for claims against the estate, \* \* \*."
The pertinent Regulations, 26 C.F.R. § 81.36 (1949) provide in part:
"§ 81.36 Claims against the estate. The amounts that may be deducted under this section are such only as represent personal obligations of the decedent existing at the time of his death \* \* \*. Only claims enforceable against the decedent's estate may be deducted."

from these properties into the Spandsco bank account and, although the name of the account was changed on the books to read "Estate of Dave Caplan" and "Sarah Caplan," there was no segregation of amounts between the two. Withdrawals were made for Sarah from this account upon her request. No accounting has been made of what Sarah's estate might owe to Dave's trust for alleged loans occurring while the Spandsco account was being used, and so it is of no further concern to our question.

In late 1952 Spandsco was liquidated and a special account was established shortly thereafter under Sarah Caplan's name with the Republic National Bank. Into this account all the oil revenues were deposited. Herschel Jaffe (the trustee) was given a power of attorney by Sarah to draw upon this account. From then until Sarah's death in 1958, all oil receipts belonging one-half to Sarah and one-half to Dave's trust were placed in Sarah's account and the trustee withdrew money for her use at her request. These withdrawals included tax allowances for depreciation and depletion of the oil properties. At Sarah's death in 1958 these allowances totaled $125,-584.90. If Sarah, as the income beneficiary of Dave's trust, was entitled to these allowances, then of course her estate does not owe any debt to Dave's trust.

In Dave's will the trustees were given the "full power to determine what parts of any amounts received in connection with oil, gas and mineral properties is principal and what part is income." Further on in his will the trustees were directed to pay to his wife "during her lifetime the entire net income from the properties." Other than these two quoted passages, there was no other reference made in the will to preservation of the corpus. Since the corpus was composed

of wasting assets, i. e., oil-producing properties, it is important to know whether the testator intended to preserve the principal by retaining from distributable income enough to cover depreciation and depletion allowances. For if the testator did so intend, then the distributions of those allowances to the income beneficiary, Sarah Caplan, were improper and in that event, the trustee would have a claim against Sarah's estate and this debt would be deductible on Sarah's Federal estate tax return.

It is basic trust law that the trustee has a duty to preserve the principal of the trust if it is a wasting asset, unless provided otherwise in the trust instrument.[3] This duty entails the setting aside as part of corpus so much of the trust income as is necessary to replace the depreciation and depletion of the property comprising the trust corpus. However, if the testator provides otherwise in the terms of the will and directs the trustee or authorizes him in his discretion to pay the income beneficiary all the receipts, retaining nothing to replace the wasting asset, then the income beneficiary is entitled to the allowances even though it works to the disadvantage of future beneficiaries.

Dave Caplan's will made no requirement that the trustee preserve the principal. Instead, he gave discretion to the trustees to decide if any receipts should be retained as a part of principal.[4] Our question, therefore, is whether Herschel Jaffe elected to retain depreciation and depletion allowances as a part of corpus or instead decided to treat all trust income as distributable. Petitioner contends that the former was, in fact, what actually occurred.

The contention of petitioner is based primarily on the statements of Herschel Jaffe, (trustee), Morris Jaffe (attorney for the Caplans) and the bookkeeper and

---

3. Restatement (Second), Trusts § 239 (1959).

4. It seems clear that "net income of the trust" is a broad enough phrase to include depreciation and depletion allowances,

especially when the will also grants discretion to the trustee to allocate receipts to income or principal. Estate of Little v. Commissioner of Internal Revenue, 274 F.2d 718 (9 Cir. 1960).

accountant. This testimony was that the trustee directed the accountant, in preparing the fiduciary income tax return for Dave's estate, to take deductions for depreciation and depletion and not distribute it. Further testimony by these same people indicated that the withdrawals by Sarah from her account, to the extent they included these depreciation and depletion allowances, were considered as loans to be repaid to the trust.

The Tax Court chose to disregard this testimony and to base its opinion on the many other facts and circumstances that point the other way. First, all the income from the oil properties—including trust income and Sarah's one-half of the community property—was deposited in one bank account. The account was in the name of Sarah Caplan (Special Account) and the trustee had a power of attorney to make withdrawals. These were made at the request of Sarah for her personal use. There was no separation of the trust funds from Sarah's own funds.

■■ Second, there was no written evidence that indicated the trustee considered these distributions to be repayable loans. The trust instrument granted no authority to make loans. The fact that the bookkeeper kept accurate accounts of all income and withdrawals from the account is not proof of a loan. Third, there is absolutely no evidence that Sarah, the alleged borrower, knew anything about this "loan." In fact, every indication was that she believed herself entitled to all the trust income and

so made continuous requests of the trustee to withdraw these funds for her personal use.[5] And while it is true that the trustee could demand repayment even though the borrower neither knew of the loan nor promised to repay it,[6] still this evidence is a strong indication of the light in which the trustee regarded these payments. Since a trustee normally has no authority to make unsecured loans of trust corpus, unless so designated in the trust instrument,[7] for us to hold that this was a loan would be, in effect, to decide that the trustee committed an improper act. We would hesitate reaching such a result when there is another explanation for the trustee's action; one which cloaks his actions with proper conduct, i. e., that he decided to treat all income as distributable.

■ Petitioner contends that Herschel Jaffe, in his capacity as both trustee of Dave's trust and manager of Sarah's properties, established this alleged loan as Sarah's agent. However, the authority to borrow money cannot normally be inferred from the general scope of the agency but rather requires designation in express terms.[8] Jaffe did not have such authority.

■ Fourth, a trustee has a duty to the beneficiaries of the corpus to invest additions to the corpus as they are deposited therein.[9] Here, petitioner contends that depreciation and depletion allowances were allocated to corpus and yet the only conceivable investment made was the "interest free loan" to the income beneficiary. Even if it is conceded that

5. It can be inferred that Sarah believed she was entitled to all the trust income. She was familiar with her husband's will —she and Dave having executed similar wills in 1950—and was led by the trustee to believe she could have all the money she requested.

6. Restatement (Second), Trusts § 254 and § 255, comment (c), illustration 4.
   See also Shade v. Colgate, 4 N.J.Super. 356, 67 A.2d 193 (1949), appeal dismissed 3 N.J. 91, 69 A.2d 19, where an

unauthorized payment out of corpus was made by the trustee to the income beneficiary and the court declared it a legally enforceable debt owed to the trust.

7. Restatement (Second), Trusts and § 227, comment (i).

8. See 3 Am.Jur.2d. *Principal and Agency*, § 88 (1962).

9. Restatement (Second), Trusts § 181, comment (c).

any interest would have been distributable back to Sarah, this transaction would still need to be recorded for tax purposes.[10]

■ In summation, for us to decide that the $125,584.90 Sarah received was a part of trust corpus would be to run completely against the weight of the evidence. For if the trustee did, in fact, decide to treat depreciation and depletion as corpus, then Sarah's use of this money was improper. It was improper because the trustee had no authority to loan money from corpus. Nor is there any strong evidence showing that anyone really treated it as a loan. And we would hestitate in reaching a conclusion that there were improper acts here when there is a much more sensible and proper reason to explain these events. And that is to hold that the trustee decided to distribute all the trust income; retaining no amounts for depreciation and depletion.[11] We so decide.

■ The final contention of petitioner is that even if the money withdrawn by Sarah is held to be properly hers, nevertheless the amount left in the account at Sarah's death (that part of trust income not withdrawn) should be considered a part of corpus. This amounted to $40,304.26 and was included as an asset on Sarah's estate tax return. Since we have decided that the trustee exercised his discretion and declared all trust income to be distributable, the fact that the income beneficiary did not spend all of her trust income is immaterial.

The decision of the Tax Court is affirmed.

---

10. Internal Revenue Code of 1954, § 641, 26 U.S.C. § 641 (1958).

11. The fact that the trust took the depreciation and depletion deductions on the oil royalties, rather than the income beneficiary, is of scant weight in deciding whether the trustee decided to reserve allowances to offset the wasting corpus. First, since the allowances were placed in Sarah's bank account she received the same benefit as if she had taken the deductions on her income tax return. And second, the determination of whether to retain amortizations on a wasting asset and who is entitled to tax deductions for amortizations—is not necessarily the same. See Estate of Little v. Commissioner of Internal Revenue, 274 F.2d 718 (9 Cir. 1960).