ESTATE OF LENA G. LAZAR, DECEASED, JOSEPH C. CHAPMAN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3564-69.   Filed June 27, 1972.

*D. Alexander Wieland*, for the petitioner.
*Max J. Hamburger*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Lena G. Lazar in the amount of $46,298.19.

The issue for decision is whether the amount of $150,000 distributed to nieces and nephews of decedent's deceased husband in accordance with a settlement of disputes between the executor and residuary legatee of decedent's estate and her deceased husband's nieces and nephews was deductible as a claim against the estate under section 2053, I.R.C. 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Lena G. Lazar died testate on January 22, 1965, a resident of the Commonwealth of Pennsylvania. Joseph C. Chapman, whose office is located in Philadelphia, Pa., was named executor under decedent's will and is still acting in that capacity.

A Federal Estate Tax Return, Form 706, was filed for the Estate of Lena G. Lazar with the district director of internal revenue, Philadelphia, Pa.

Decedent and her husband, Milton C. Lazar (hereinafter called Milton), were married in 1903 and remained married and without issue until his death on September 4, 1947, at age 71. A Federal Estate Tax Return for the Estate of Milton C. Lazar was filed with the collector of internal revenue, Philadelphia, Pa.

Sometime in 1946, Milton developed carcinoma, which by May 1947 had reached such an advanced stage that Milton knew that his death was imminent. A short time prior to May 28, 1947, Milton told decedent that since most of the property which he and decedent owned jointly had originated from his side of the family, he wanted three-fourths of the property to go to his nieces and nephews after decedent's death. At that time, as at the time of Milton's death, Milton and decedent owned as tenants by the entirety, stocks, bonds, and bank accounts of a total value of approximately $246,000, of which assets of a value of approximately $212,000 had derived from Milton and assets of a value of approximately $34,000 had derived from decedent. Milton owned in his name only stock of a value of approximately $1,800 and owned life insurance policies of approximately $25,000 face value, in which decedent was named beneficiary.

---

[1] All references are to the Internal Revenue Code of 1954.

In May 1947, Milton stated to decedent that unless she would enter into an agreement promising to make and maintain a will disposing of three-fourths of her entire estate to Milton's nieces and nephews he would revoke his last will dated December 23, 1943, and limit her interest in their property by deed of trust or by will to a life estate. Decedent and Milton consulted their family attorney who prepared an agreement for them which was executed by decedent and Milton on May 28, 1947. While decedent was displeased with the terms of the agreement, she signed the agreement. She stated to the attorney that she had signed it in order to avoid causing Milton any additional mental distress during the short time he had remaining to live.

The agreement provided *inter alia*, that Milton would maintain his last will and testament, dated December 23, 1943, under which Milton's residuary estate was bequeathed absolutely to decedent and that decedent would make and maintain a will under which three-fourths of her entire estate would pass to five of Milton's nieces and nephews. There was the added restriction that decedent could not make gifts of the inheritance received from Milton except for normal gifts to charities or emergency gifts to members of either of their families.

Milton died on September 4, 1947. His last will and testament, dated December 23, 1943, was duly probated. Decedent was named as executrix and residuary legatee of Milton's estate, which she received after payment of debts, funeral and administration expenses, and estate and succession taxes.[2]

After Milton's death decedent made several wills between 1947 and 1963, each of which complied with the terms of the 1947 agreement. Decedent stated to her attorney that she resented having to make bequests as required under the 1947 agreement, but since the attorney assured her that the agreement was binding on her, decedent reluctantly acquiesced.

In February 1963 decedent consulted another attorney upon the recommendation of her investment adviser, Joseph C. Chapman. This attorney advised decedent that the agreement of May 28, 1947, was invalid and unenforceable and that in his opinion she was not obligated to comply with its terms.

On February 14, 1963, decedent executed a trust agreement as settlor with Provident Tradesmen's Bank & Trust Co. and Joseph C. Chapman as trustees, with the trust corpus consisting of certain specified bonds. Under the trust agreement the trust income was

---

[2] In computing Milton's gross estate the bonds derived from decedent in the amount of $33,943.75 were not included so that the amount of Milton's gross estate was $238,749.71.

payable to decedent for life, and upon her death the principal, together with any accrued and undistributed income, became payable to decedent's nephew, Clement Stuart, and decedent's niece, Hortense Strause.

Decedent's last will and testament was executed on January 18, 1965, and she died 4 days later on January 22, 1965. Her will was admitted to probate by the register of wills of Philadelphia County as will No. 330 of 1965 and letters testamentary were issued thereon to Joseph C. Chapman by the register of wills of Philadelphia County.

Decedent's will dated January 18, 1965, made no provision for any of the beneficiaries designated in the 1947 agreement, except to the extent that it made bequests of $25,000 each to two of Milton's nieces, Mildred Lazar Barab and Eleanor Lazar Reuben. The residuary estate was bequeathed to decedent's nephew, Clement Stuart. The will provided that if any beneficiary contest the will or the trust agreement of February 14, 1963, or seek to enforce the agreement of May 28, 1947, the bequest of such beneficiary would be considered to be annulled and revoked.

Thereafter, as more fully described below, Susan R. Simon, a niece of Milton's [3] on her own behalf and on behalf of others, commenced two actions in the Orphans' Court of Philadelphia County, a court of competent jurisdiction having jurisdiction over the estate of decedent, Lena G. Lazar, against the estate of decedent, Lena G. Lazar, as follows:

(a) On or about April 1, 1965, Susan R. Simon filed an appeal from the decree of the Register of Wills admitting Lena G. Lazar's last will dated January 18, 1965, to probate.

(b) On or about April 21, 1965, Susan R. Simon, on her own behalf and on behalf of others, brought action for removal of Joseph C. Chapman, executor of the will of Lena G. Lazar, deceased.

The suits alleged that the will dated January 18, 1965, was procured by undue influence.

Answers were filed denying undue influence by Executor Joseph C. Chapman by his attorneys and by Clement Stuart, residuary legatee under decedent's will, by his attorney. Preliminary objections were filed by Clement Stuart, by Joseph C. Chapman, executor, and by Provident National Bank (formerly Provident Tradesmen's Bank & Trust Co.), by virtue of its being a trustee under the trust agreement dated February 14, 1963, contending that the rights, if any, of petitioners therein, Susan R. Simon, et al., under the agreement of May 28,

---

[3] Notwithstanding the stipulation of the parties to the effect that Susan R. Simon was Milton's niece, such fact is in conflict with certain exhibits which indicate that Susan R. Simon was the daughter of Milton's niece, Ruth Simon, who predeceased decedent. Ruth Simon was one of the five persons designated to be beneficiaries under the 1947 agreement.

1947, were creditors' rights, and as such petitioners therein would have no standing to contest the will.

The Orphans' Court of Philadelphia County, in granting petitioners therein leave to file an amended petition to more fully allege the cause of action, ruled:

If petitioner's claim was based solely on the status as creditor she would have no right to challenge the validity of the will.

But she apparently has other rights, the nature of which we must explore. * * *

and that under Pennsylvania law "beneficiaries under a prior will which would become effective if the contested writing were held to be invalid" would have standing.

Thereafter, Susan R. Simon, et al., filed an amended petition on November 9, 1965, as authorized by the Orphans' Court, alleging, *inter alia,* that each will executed by decedent beginning on February 14, 1963, up to and including the last will on January 18, 1965, was made by decedent while under the undue influence of Carrie Silverman, Clement Stuart, and others, inducing her to ignore the provisions of the agreement of May 28, 1947.

Joseph C. Chapman and Provident National Bank, executors, filed their answer to the amended petition in which they averred that the agreement of May 28, 1947, was invalid and unenforceable and denied that decedent was under the undue influence of Clement Stuart, Carrie Silverman, or any other person at the time of the execution of her wills dated February 14, 1963, April 10, 1963, May 21, 1963 (and codicil thereto dated October 28, 1964), and January 18, 1965.

Clement Stuart, nephew and legatee of the residuary estate of decedent, filed his answer to the amended petition in which he averred that the agreement of May 28, 1947, was invalid and unenforceable for failure of consideration and denied that decedent was under the undue influence of Clement Stuart, Carrie Silverman, or any other person at the time of the execution of her wills dated February 14, 1963, April 10, 1963, May 21, 1963 (and codicil thereto dated October 28, 1964), and January 18, 1965.

Thereafter, on May 12, 1966, the various parties involved in the aforesaid issue raised by Susan R. Simon entered into a stipulation which in part provided:

6. The appeal from the Register in probating the will was withdrawn on petition of Susan R. Simon per decree of Lefever, J., dated March 8, 1966.[4]

7. The various parties in interest have reached an agreement compromising the disputes which have arisen among them relating to the various rights under

---

[4] The decree of "Lefever, J., dated March 8, 1966," permitting the withdrawal of the appeal from the register in probating the will on petition of Susan R. Simon is not in the record. However, the inference from the record is that this withdrawal was a part of the negotiated settlement.

the agreement between Mr. and Mrs. Lazar dated May 28, 1947, the deed of trust of Lena G. Lazar dated February 14, 1963 and the various wills of Lena G. Lazar.

8. It is deemed in the best interest of all parties in interest to accept this agreement in settlement of all such disputes because of the difficult legal questions involved, the difficulties of proof and the expense, publicity and delay incident to further proceedings.

Now Therefore, in consideration of the above and in full settlement of all claims and disputes relating to (1) the agreement between Mr. and Mrs. Lazar dated May 28, 1947, (ii) the agreement of trust of Lena G. Lazar dated February 14, 1963, (iii) the various wills of Lena G. Lazar and (iv) the estate of Lena G. Lazar, the parties executing this instrument, intending to be legally bound hereby, stipulate and agree as follows:

A. The Court is requested to dismiss with prejudice the petition of Susan R. Simon for a citation to show cause why Joseph C. Chapman should not be removed as executor.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

C. At the audit of the account of the executor of the will of Lena G. Lazar the statement of proposed distribution shall request that distribution of the testamentary estate be made as follows:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　,　\*

To BERNARD L. FRANKEL, ESQ., as counsel for Susan R. Simon, Fred M. Simon, 3rd, Carolyn B. Salsbury, Mildred L. Barab and Eleanor Reuben (all of the surviving beneficiaries of the agreement between Mr. and Mrs. Lazar dated May 28, 1947), the sum of $150,000.00 (that part of the award allocable to Fred M. Simon, 3rd, a minor, to be held by Mr. Frankel for disposition in such manner as the Court shall direct).

To CLEMENT STUART, the residue of the estate.

The schedule of distribution submitted by the estate was approved by the Orphans' Court of Philadelphia County on June 1, 1966.

Subsequent to the payment in the amount of $150,000 to Bernard L. Frankel, attorney for Susan R. Simon, et al., petitioner filed an inheritance tax return with the Commonwealth of Pennsylvania in which a deduction of $150,000, representing the above payment, was claimed as a debt of the estate.

The aforesaid deduction was disallowed by the Commonwealth of Pennsylvania, and petitioner filed an appeal to the Orphans' Court of Philadelphia County in which the following question was presented:

Is the sum of $150,000.00 paid in settlement to claimants, relatives of the decedent's husband, as third party beneficiaries under an agreement between the decedent and her husband, providing that the decedent would bequeath three-quarters of her estate to her husband's relatives, which the decedent failed to do, deductible from her gross estate for Inheritance Tax purposes as a debt?

Thereafter, under date of December 12, 1968, the hearing judge of the Orphans' Court of Philadelphia County, Judge Robert V. Bolger,

entered a decree dismissing the appeal of the petitioner-executor and affirming the determination of the Commonwealth of Pennsylvania that the aforesaid claim for $150,000 was not deductible. Without ruling on the validity or enforceability of the 1947 agreement, the court ruled that under the Pennsylvania Inheritance and Estate Tax Act of 1961, the deduction claimed was improper. The opinion and decree of Judge Bolger stated in part as follows:

Any deductions for indebtedness when founded upon a promise or agreement is limited to the extent that, inter alia, it is supported "by adequate and full consideration in money or money's worth." The 1947 agreement does not by its terms set forth any consideration passing between the parties except their mutual promises. However, assuming that by the agreement Lena gave up a marital right, that is, her right to elect to take against her husband's will, it is apparent from section 662 of the act that if such a relinquishment is the consideration for the agreement, it is not consideration in "money or money's worth". Section 662 is in effect a legislative declaration that relinquishment of marital rights can never be consideration "in money or money's worth."

On December 17, 1968, petitioner filed exceptions to the opinion and decree of Judge Bolger. On March 5, 1969, the Orphans' Court of Philadelphia County, sitting *en banc*, entered its decree dismissing petitioner's exceptions and sustaining the opinion and decree of Judge Bolger.

Petitioner, thereupon, appealed the decision of the Orphans' Court of Philadelphia County to the Supreme Court of the Commonwealth of Pennsylvania, the highest appellate court of the Commonwealth of Pennsylvania. The Supreme Court of the Commonwealth of Pennsylvania handed down its decision on January 30, 1970, in *In re Estate of Lena G. Lazar* v. *Commonwealth of Pennsylvania*, officially reported at 437 Pa. 171, 260 A. 2d 734, in which it affirmed the decree of the court below that the aforesaid $150,000 was not deductible as a debt of the estate.

Decedent's gross estate for estate tax purposes was computed as follows:

| Gross estate | Alternate value | Value at date of death |
| --- | --- | --- |
| Stocks | $560,014.56 | $564,796.91 |
| Mortgages, notes, and cash | 16,855.32 | 16,855.32 |
| Other miscellaneous property | 4,193.10 | 4,193.10 |
| Transfers during decedent's life | 197,929.75 | 201,215.61 |
| Total gross estate | 778,992.73 | 787,060.94 |

Deductions from decedent's gross estate as claimed on the estate tax return were composed of $41,647.31 in debts and funeral and administration expenses and the $150,000 stated to be a debt of the estate paid in settlement of "claims of donee-beneficiaries under an agree-

ment between decedent and her deceased husband * * * dated May 28, 1947."

Respondent in his notice of deficiency disallowed the claimed deduction of $150,000.

OPINION

Petitioner contends that the $150,000 settlement payment made to Susan R. Simon, et al., was in discharge of decedent's obligations under the agreement of May 28, 1947, and, therefore, deductible from decedent's gross estate under section 2053.[5] Petitioner asserts that the 1947 agreement was valid and enforceable and that Susan R. Simon, et al., as third-party beneficiaries under that agreement had an enforceable creditor's claim against decedent's estate. Petitioner's assertion that the 1947 agreement was valid and enforceable is predicated on the contention that the 1947 agreement was contracted bona fide for adequate and full consideration.

Respondent takes the position that the payment of $150,000 by petitioner was in settlement of the suit brought by Susan R. Simon, et al., to set aside decedent's wills which were nonconforming with the 1947 agreement. Under respondent's view the settlement was made to compromise a claim to share "in" decedent's estate as distinguished from a claim "against" the estate, and would therefore not constitute a deductible claim against the estate within the meaning of section 2053.

Respondent additionally contends that petitioner, having taken the position in prior proceedings before the Orphans' Court of Philadelphia County and the Supreme Court of the Commonwealth of Pennsylvania that the agreement of May 28, 1947, was invalid, illegal, and lacking in consideration, and having received unfavorable rulings in those courts, should not obtain a different result herein on the basis of a diametrically opposed legal position on the same facts.

Petitioner has already litigated the issue of whether the $150,000 settlement payment was deductible as a claim against the estate under the Pennsylvania Inheritance Tax Act. *In re Estate of Lazar*, 260 A. 2d 734 (1970). The Orphans' Court of Philadelphia County, the court of original jurisdiction in the State inheritance tax proceeding, disal-

---

[5] This section provides in part:

SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

* * * * * * *

(3) for claims against the estate, and

* * * * * * *

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

lowed the deduction. The opinion and decree of that court is set forth in part in our Findings of Fact.

Petitioner appealed the decision of the Orphans' Court of Philadelphia County to the Supreme Court of Pennsylvania. The Supreme Court of Pennsylvania, in affirming the decision of the lower court, noted the striking similarity between the State inheritance tax provisions and the Federal estate tax law as follows (260 A. 2d at 736):

The purpose of this section and the similar provisions of the federal estate tax law, 26 U.S.C.A. section 2053(c), is to prevent the depletion of a decedent's taxable estate by the creation of indebtedness intended as a substitute for a taxable bequest. "The purpose of the phrase under discussion was, in our opinion, to prevent a man from diminishing his taxable estate by creating obligations not meant correspondingly to increase it but intended as gifts or a means of distributing it after his death." Commissioner of Internal Revenue v. Porter, 92 F.2d 426, 428 (2d Cir. 1937). "Absent such an offset or augmentation of the estate, a testator could disguise transfers as payments in settlement of debts and claims and thus obtain deductions for transmitting gifts." United States v. Stapf, 375 U.S. 118, 131, 84 S.Ct. 248, 257, 11 L.Ed. 2d 195 (1963).

Petitioner, before the Supreme Court of Pennsylvania, took the position that the agreement of May 28, 1947, was invalid and unenforceable. In reaching its conclusion the Supreme Court of Pennsylvania made the following observation (260 A. 2d at 736):

In dealing with the claimants, it was appellant's position that the agreement was invalid and unenforceable because of a failure of the intended consideration in that Lena was going to receive $260,000 of the $262,000 by operation of law regardless of what Milton provided in his will. It is not necessary for us to determine whether appellant was correct in taking that position. He has chosen to assert the inapplicability of Section 632 [footnote omitted] and is bound by that choice.

* * * Before a taxpayer is entitled to a deduction, he must indicate what section of the statute provides for that deduction. Appellant nowhere states what section would permit the deduction of a payment made in compromise of a claim that the executor contends is spurious. Appellant assumes that a deduction follows naturally and automatically from a finding that Section 632 does not apply. * * * The only section upon which appellant could rely is Section 631 which provides for deducting all liabilities of the decedent. He, however, can not assert simultaneously that the contract was invalid, and unenforceable and hence not subject to Section 632, and that a payment in compromise of that claim (although invalid and unenforceable) is deductible as a liability of the decedent.

Appellant must be denied the deduction because he has not shown what section of the statute grants it to him. The decree of the court below is affirmed. Costs on the appellant.

The decision of the Supreme Court of Pennsylvania was based upon the applicable provisions of the Pennsylvania Inheritance Tax Act. Notwithstanding the similarity of the provisions of that act to the Federal estate tax law, that decision is an interpretation of State law. Even if that decision is viewed as an interpretation of the Federal

estate tax law, it is well settled that "no effect is given a State court decision which undertakes to interpret such a provision." *Estate of Harry Britenstool*, 46 T.C. 711, 715 (1966). Where the issue in Federal tax litigation requires a determination of the rights of, or the nature of interests, created under State law, a decision of a lower State court adjudicating those rights or interests is not conclusive. The State law as interpreted by the highest court of the State is controlling, and if the highest court of the State has not spoken on the subject, the Federal court must apply what it finds to be the State law, giving consideration to the decision of the lower State courts. *Commissioner* v. *Bosch*, 387 U.S. 456 (1967).

Section 2053(a)(3) provides for the deduction of claims against the estate which are allowable under the laws of the jurisdiction under which the estate is being administered. The allowability of the claim against decedent's estate is a question of State law. However, in no case in litigation before the courts of the Commonwealth of Pennsylvania was any determination made as to the validity or enforceability of the agreement of May 28, 1947. In fact, both the Orphans' Court of Philadelphia County and the Supreme Court of Pennsylvania specifically announced the lack of any necessity to decide that issue in the State inheritance tax case. We, likewise, find it unnecessary to resolve the rather complex issue as to the rights of the various parties under that agreement.

We view the claim of Susan R. Simon, et al., for which the decedent's estate paid $150,000 in settlement, as a claim to *share in* the estate as distinguished from a claim *against* the estate. Such a claim is to a distributive interest in the estate, not a claim *against* the estate within the meaning of section 2053(a)(3), and as such would not be deductible from the gross estate. *Latty* v. *Commissioner*, 62 F. 2d 952 (C.A. 6, 1933), dismissing petition to review 23 B.T.A. 1250 (1931). Our conclusion is supported by the fact that Susan R. Simon sought to establish her rights as *beneficiary* in the Orphans' Court of Philadelphia County rather than assert her rights in a claim as a third-party beneficiary [6] of the agreement of May 28, 1947. Indeed, no action or suit was pursued by Susan R. Simon, et al., as a claimant under color of a contractual right nor was any such right legally established. See *Estate of Louis D. Markwell*, 40 B.T.A. 65, 70 (1939), affd. 112 F.2d 253 (C.A. 7, 1940).

The claims in litigation of Susan R. Simon, et al., were cast in the form of claims of a beneficiary of the estate as distinguished from

---

[6] As a third-party beneficiary, Susan R. Simon would be a donee-beneficiary as distinguished from a creditor-beneficiary, having provided no consideration directly or indirectly herself for decedent's promise to make a will conforming with the provisions of the agreement of May 28, 1947.

claims adverse to the estate. Cf. *Estate of Louis D. Markwell, supra.* Respondent urges, and we agree, that the tax treatment to be accorded the proceeds of a law suit is to be determined by the nature of the litigation with respect to which the payment in settlement is made. *Nicholas W. Mathey*, 10 T.C. 1099, 1104 (1948), and cases there cited, affd. 177 F.2d 259 (C.A. 1, 1949).

No litigation asserting the rights of Susan R. Simon, et al., as third-party beneficiaries of the agreement dated May 28, 1947, was ever effectively commenced. No claim of right as third-party beneficiaries was ever established by Susan R. Simon, et al. See *Estate of Sarah Caplan*, 42 T.C. 446 (1964), affd. 355 F.2d 987 (C.A. 5, 1966).

The $150,000 settlement distribution was made in the wake of litigation petitioning the setting aside of the wills of decedent executed on or after February 14, 1963, and the removal of petitioner Joseph C. Chapman as executor. It is evident that this settlement was made to avoid the burdensome costs of protracted litigation over the rights of Susan R. Simon, et al., as beneficiaries of the estate and over the removal of petitioner Joseph C. Chapman, as executor.

We therefore conclude that the $150,000 was paid in settlement of a claim to *share in* the estate. Our conclusion is supported by the fact that the $150,000 was paid as a "distribution" from the testamentary estate pursuant to the stipulation dated May 12, 1966, which specifically designates and casts the payment of that sum as a testamentary distribution, and approved by the Orphans' Court of Philadelphia County as a "distribution" of the testamentary estate on June 1, 1966. Cf. concurring opinion of Justice Pomeroy, *In re Estate of Lazar, supra* at 737–738.

Assuming, *arguendo*, that we were to conclude, and we do not, that the $150,000 settlement was paid in consideration of the right of Susan R. Simon, et al., to claim as third party beneficiaries under the contract between Milton and decedent, the payment would not of necessity constitute a deductible claim against decedent's estate.

The deductibility of claims against the estate under section 2053 (a) (3) is subject to the limitations of section 2053(c) (1) (A)[7] which provides that claims against the estate when founded on a promise or agreement, "be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth." For a claim founded on a promise or agreement to be deductible it must be (1) allowable under State law, and (2) meet the re-

---

[7] SEC. 2053(c). LIMITATIONS.—

  (1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) AND (b).—

    (A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * *

quirement of section 2053 (c) (1) (A) that it be founded on "adequate and full consideration in money or money's worth." *Taft* v. *Commissioner*, 304 U.S. 351 (1938). However, merely because a claim against an estate would be allowable or enforceable under State law governing the validity of contracts does not of necessity make it deductible for Federal estate tax purposes. *Taft* v. *Commissioner*, *supra*, and *Estate of Herbert C. Tiffany*, 47 T.C. 491, 500 (1967). While consideration may be sufficient to establish an enforceable claim under State law, the same consideration does not necessarily constitute "adequate and full consideration in money or money's worth" within the meaning of section 2053. *Estate of Ella J. Davis*, 57 T.C. 833 (1972).

Respondent points out that the vast majority of the property held by Milton and decedent was held as an estate by the entirety. Such an estate is a form of joint ownership of property combined with a right of survivorship. Respondent asserts that Milton's testamentary estate was insolvent and that he possessed nothing which he could use to provide adequate and full consideration in money or money's worth to support the promise of his wife to make and maintain a will conforming to the provisions of the agreement of May 28, 1947.

Petitioner contends that there was full and adequate consideration in money or money's worth provided by Milton in support of the claim against decedent's estate. Petitioner contends that notwithstanding the fact that the vast majority of the property owned by Milton and decedent was held as estate by the entirety, Milton had placed most of that property in their joint names with the belief that he continued to control that portion of the property originating with him. Petitioner concludes that Milton could have gained restitution of any property originating with him but held by decedent and Milton as tenants by the entirety. Petitioner cites as authority for this conclusion: Restatement, Restitution, secs. 49 and 51; *White* v. *White*, 346 Mass. 76, 190 N.E. 2d 102 (1963); *Bauer* v. *Crummy*, 56 N.J. 400, 267 A. 2d 16 (1970); and a headnote from *United Fruit Co.* v. *United States*, 186 F.2d 890 (C.A. 1, 1951). We do not agree with petitioner's contentions and find the authority cited not to be controlling of the issue.

The sections of Restatement of the Law—Restitution cited by petitioner are premised on transfers made where there is a mistake of law. The cases cited are likewise founded on factual situations wherein there was a mistake of law or a mistake of fact and law.[8] Petitioner has not established herein, nor is there any indication in the proceedings before the Pennsylvania courts, of the existence of such a mistake at the time of the transfer of property to an estate by the entirety. There is nothing in the record before us to support an inference of any

---

[8] It also might be noted that none of these cases involved husband and wife holding property as tenants by the entirety.

such mistakes of fact or law at the time of the transfer of the property to tenancy by the entirety. Of even greater significance is the fact that the cases cited by petitioner as controlling on this point are expressions of New Jersey and Massachusetts law by the highest courts of those States and not of Pennsylvania law which would control the issue in this case.[9]

Under Pennsylvania law an estate by the entirety is a form of joint ownership in husband and wife with the right of survivorship. Such an estate may only be destroyed or terminated by the joint acts of the cotenants and not by the act of one of them. *In re Gallagher's Estate*, 352 Pa. 476, 43 A. 2d 132, 133 (1945). An estate by the entirety under Pennsylvania law dies with the owner, who has no testamentary power of disposition over the property so held since the survivor of the cotenants receives absolute title to the whole by operation of law. *In re Williams' Estate*, 349 Pa. 568, 37 A. 2d 584 (1944); *In re Flynn*, 1 F.2d 566 (W.D. Pa. 1924).

At the time Milton and decedent entered into the agreement of May 28, 1947, and at the moment preceding Milton's death the property held by them as tenants by the entirety continued to exist as an estate by the entirety. See concurring opinion of Justice Roberts, *In re Estate of Lazar, supra* at 737. Petitioner has failed to establish that Milton was possessed of sufficient property rights to constitute adequate and full consideration in money or money's worth supporting the agreement of May 28, 1947, within the meaning of section 2053(c)(1). Therefore, even if we were to view the payment of the $150,000 to be in settlement of a right of claim by third-party beneficiaries under the agreement of May 28, 1947, which was enforceable under State law, which we do not, we would conclude that their claim was not sup-

---

[9] Petitioner cites *Silverman's Estate*, 51 Pa. D. & C. 2d 589 (C.P., Orphans' Div., 1970), to support its position that placing property in the joint names of a husband and wife does not create tenancy by the entirety nor prevent such property from being regarded and dealt with as the separate property of the spouse who provided the funds for the acquisition of the property.

Petitioner's emphasis on the case of *Silverman's Estate* is misplaced. The facts here show that the property held by Milton and decedent was for the most part held as an estate by the entirety and not simply as a joint tenancy. In addition, *Silverman's Estate* does not support petitioner's position, since that case involved a "Mutual Agreement" of the parties at the time of acquisition of the property that the wife was the sole owner of the property. Such an agreement constitutes the joint acts of the parties in acquiring the property. No such fact is present in the case herein. See *In re Gallagher's Estate*, 352 Pa. 476, 43 A. 2d 132 (1945). In the *Silverman* case the court specifically quoted the statement by the Supreme Court of Pennsylvania in *Brenner v. Sukenik*, 410 Pa. 324, 189 A. 2d 246, 249 (1963), that a "conveyance of real or personal property to a husband and wife *without more*, vests in them an estate by the entireties" but "if it is the intention of the parties to create an estate other than by entireties, such intention will be given effect" and that Pennsylvania law is clear that where "a husband transfers his property [to his wife] without consideration, the law presumes that a gift to the wife was intended." In the instant case, not only was the property held by Milton and decedent as tenants by the entirety, but if that estate were created by Milton's transfer of property derived from him to decedent, Pennsylvania law would "presume that a gift" to decedent was intended.

ported by adequate and full consideration in money or money's worth and, hence, not deductible as a claim against the estate under section 2053(a)(3).

Finally, even if the record supported the conclusion that there was full and adequate consideration in money or money's worth for the agreement of May 28, 1947, we would conclude that petitioner has failed to establish the deductibility of the $150,000. The stipulation with respect to the settlement dated May 12, 1966, recites as consideration for the $150,000 settlement distribution the following:

in full settlement of all claims and disputes relating to (i) the agreement between Mr. and Mrs. Lazar dated May 28, 1947, (ii) the agreement of trust of Lena G. Lazar dated February 14, 1963, (iii) the various wills of Lena G. Lazar and (iv) the estate of Lena G. Lazar, * * *

The stipulation does not apportion the $150,000 settlement distribution to the four designated bases of the claims of Susan R. Simon, et al. Petitioner has presented no evidence upon which a reasonable apportionment of any part of the $150,000 settlement distribution could be made to the rights of Susan R. Simon, et al., as third-party claimants under the agreement dated May 28, 1947, as distinguished from their rights as beneficiaries of the testamentary estate under prior wills or otherwise. Therefore, petitioner would still have failed to establish the deductibility of the $150,000 settlement distribution or any part thereof under section 2053. *Raytheon Production Corporation*, 1 T.C. 952 (1943), affd. 144 F. 2d 110 (C.A. 1, 1944).

*Decision will be entered for respondent.*