JOSEPHINE BAUER AND JEROME J. HARZ, EXECUTORS OF THE ESTATE OF JOSEPHINE HARZ, DEC'D., PLAINTIFFS-APPELLANTS, v. ANDREW B. CRUMMY AND JOSEPH R. PURCELL, EXECUTORS AND TRUSTEES OF THE ESTATE OF FRANK J. HARZ, DEC'D, DEFENDANTS-RESPONDENTS.

Argued February 16, 1970 and April 20, 1970—Decided July 6, 1970.

*Mr. William M. Feinberg* argued the cause for appellants (*Messrs. Feinberg, Dee* and *Feinberg,* of counsel; *Mr. Francis G. Fitzpatrick,* attorney).

*Mr. Michael R. Griffinger* argued the cause for respondents (*Messrs. Crummy, Gibbons* and *O'Neill,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. This case involves a bank account in the name of a mother and her son, payable to either or the survivor. The mother, Josephine Harz, predeceased the son, Frank. The son died a few months later. The mother's executors brought this action to recover the balance of the account as of the time of her death. On motion, the trial court found the complaint did not state a claim for relief and gave judgment for the son's executors. The Appellate Division affirmed in an unreported opinion. We granted plaintiffs' petition for certification. 54 *N. J.* 498 (1969).

The matter having been decided on a motion, the allegations of the complaint must be accepted as true and viewed most favorably for plaintiffs. The complaint alleged that the moneys deposited were and remained the property of the mother; that the account was opened on February 2, 1956 for the express purpose and on the express agreement with the son that the account be the depository of her funds and

"that the only interest and function of the said Frank J. Harz in relation to the said deposit account would be and continue to be custodial, so as to enable him to take care of the depositing of the aforesaid moneys * * * and so as to enable him to make withdrawals for her therefrom as she would from time to time direct." The complaint continued that the "purpose and design of the said Josephine in opening the said account in the manner aforesaid with the said Frank J. Harz was for a convenience to herself and to supply a need occasioned by her advancing years and inactivity, respecting the deposit of her income * * * and her making withdrawals * * * to satisfy her requirements therefor"; that the son knew all of this, and that notwithstanding the "statement in the extremest of fine print" in the bank's form purporting to create an immediate joint tenancy with right of survivorship, the son knew the mother "at no time intended that the said * * * joint account was or should ever become a joint account with right of survivorship" in him.

The complaint then alleged that notwithstanding the foregoing, the son "did frequently without cause fail and refuse to comply with the understood and agreed purpose of the said joint account as aforesaid, and did frequently so fail and refuse to comply with the requests of the said Josephine for the withdrawal by him for her and in her behalf of moneys from the said account to satisfy her need and desire therefor." As a result, the complaint charges, the mother in September 1963 opened other bank accounts into which she deposited her income.

The complaint further revealed the will of the mother, which we are advised was executed on June 12, 1963, some seven years after the account in question was opened, purported to dispose of the moneys in the account in these words:

Sixth—I do give, devise and bequeath all the rest, residue and remainder of my estate, of every kind and description and wheresoever the same may be situate, including moneys on deposit in any bank belonging to me, whether in my name alone, or in my name with that of my son Frank Harz, which money belongs to me, to my daughters

Margaret Maak, Josephine Bauer, and my sons Jerome Harz, Harold Harz and Carlton Harz, and my grandchildren Oriele and Eugene Harz, the two children of my deceased son Eugene Harz, to be divided equally among them. The two children of my deceased son Eugene Harz, to have divided between them the one equal share their father would have received had he survived me.

The complaint alleged the will added:

Eighth—I have made no further provision under this my will for my son, Frank Harz, not because of any lack of affection for him, but because he has sufficient means of his own.

The trial court held the complaint failed to set forth any basis to overcome the terms of the printed card the mother and son signed when the account was opened. The parties did not consider the further question whether the last will and testament of the mother controlled the disposition of the bank account. We called for argument upon that question.

I

We will consider first whether a depositor's last will and testament may control the disposition of an account notwithstanding the provision in the terms of the account providing for the right of survivorship in another person. The defendants say the will cannot control, and this because of the statute dealing with joint accounts, *N. J. S. A.* 17:9A-218.

If in fact a joint tenancy with its right of survivorship came into being during the mother's lifetime, of course her last will and testament could not affect the preexisting right of the son to become the sole owner upon her death. *Straut v. Hollinger,* 139 *N. J. Eq.* 206, 208 (Ch. 1947); 20 *Am Jur.* 2d, Cotenancy and Joint Ownership, § 3, *p.* 95. Thus one question is whether the cited statute was intended to constitute the depositor and the donee such joint tenants despite the actual intent of a depositor that title shall remain exclusively in the depositor during the depositor's lifetime,

or whether the statute was intended only to empower the depositor to provide for a gift to the surviving donee effective upon the depositor's death. If the statute was thus intended to permit a gift to take effect upon the depositor's death, then the next question is whether the statute denies to the depositor the power to dispose of that account by a last will and testament notwithstanding that his title to the account was sole and exclusive during his lifetime and hence would, absent a statutory bar, be disposable by his last will and testament.

The answers to these questions emerge from the history of the subject. That history was fully recounted in *Howard Savings Institution v. Kielb*, 38 *N. J.* 186 (1962), and *Ward v. Marine National Bank*, 38 *N. J.* 132 (1962). We will summarize it for present purposes.

There had been a need for some simple technique whereby the owner of a bank account could retain the sole right to the moneys during his lifetime and yet accomplish a gift of the balance remaining on his death to someone designated on the account to receive it. Conventional legal thinking stood in the way, for a transaction of that kind did not fit into the long established law of wills or the rules relating to gifts. The survivorship provision was testamentary in quality, but the account was not executed with the statutory formalities required of a will. Nor did the transaction come within the concept of a gift *causa mortis* because the account was not created in the face of impending death. The conventional concept of a gift *inter vivos* was unsuited because it would lead to an immediate joint tenancy with an equal right of enjoyment in the donee whereas the depositor wanted to be the sole owner as long as he lived. Thus, if the depositor did not intend to part at once with his sole title and enjoyment, the claim of survivorship failed because a right of survivorship could exist only as an incident of a joint tenancy and the joint tenancy could not come into being if there was no intent to vest immediately in the donee an equal interest in the account.

There of course was no constitutional reason why the Legislature could not provide that a gift may take effect upon the depositor's death despite the usual rules concerning wills and gifts, but our courts persisted in finding the statutes relating to bank accounts were subservient to the statute of wills and to the conventional rules relating to gifts *inter vivos*.

Depositors have sought to achieve their dual objectives of (1) sole control during their lifetime and (2) a transfer upon death to the surviving beneficaries by three types of accounts: (a) an account in which the depositor is the trustee and the donee the beneficiary of the trust if he survives; (b) a deposit in the name of the depositor alone, payable on death to a named survivor; and (c) a deposit in the name of both the depositor and the donee, payable to the survivor.

The first method, the so-called "tentative" or "Totten" trust, was held in *Matter of Totten,* 179 *N. Y.* 112, 71 *N. E.* 748 (Ct. App. 1904), to be legally sufficient to pass title and enjoyment to the beneficiary upon the depositor's death, but our courts went the other way, because there was no immediate *inter vivos* gift and the arrangement was not evidenced by an instrument executed with the formalities required by the statute of wills. See *Howard Savings Institution, supra,* 38 *N. J.* at 192. The second method, a deposit in the name of the depositor alone, payable on his death to another, obviously ran afoul of the same preconceptions. The joint account payable to survivor fared no better, for like reasons.

The judicial approach with respect to the joint account was restated firmly in *Rush v. Rush,* 138 *N. J. Eq.* 611 (E. & A. 1946), and *Stiles v. Newschwander,* 140 *N. J. Eq.* 591 (E. & A. 1947). The present statute, *N. J. S. A.* 17:9A–218, was drawn in the light of those decisions. This is apparent from a comparison of language. In *Stiles,* the court said at 593:

Neither the form nor the content of the account is, in itself, conclusive of the issue of title and ownership. Such interest (if any) as the survivor has in the deposit derives from a gift *inter vivos* and not from a contract between the co-depositors *inter se;* and a gift, in turn, derives its legal efficacy solely from the intention of the donor. A donative purpose is an indispensable requisite. And a valid gift *inter vivos* goes into immediate and absolute effect. If the design of the deceased transferor was not an immediately effective gift, but a transfer merely for convenience of withdrawal, with retention in herself of full ownership and absolute dominion over the deposit until her death, Albert to take the balance of the fund in the event of his survival, without any present interest in the deposit, there was not a gift *in praesenti;* and the gift in case of survival, *i. e.,* to take effect upon the death of the transferor, would be testamentary in character and void for non-conformance with the statute of wills. A gift of a bank deposit in terms either of common ownership or of joint tenancy is but *prima facie* evidence of an intention to make a gift *in praesenti;* and the writing succumbs to proof in quality sufficient to overcome that presumption. These are the principles pertinent here. *Rush v. Rush,* 138 *N. J. Eq.* 611.

The court added at 594:

If, in the absence of evidence *contra,* the presumptive inference of an intention to make a gift presently effective is drawn from the frame of the deposit, it is one thing; but where the evidence affirmatively shows a contrary intention or no intention at all, one of the essential requisites of a gift *inter vivos* is wanting.

Thus the testamentary objective could be achieved only if it were found that there was an intent to make an unconditional gift *inter vivos* resulting in the immediate creation of a joint tenancy with survivorship. As to this *Rush* said of the then statute, 138 *N. J. Eq.* at 616:

*R. S.* 17:9–5, N. J. S. A. does not give rise to a *conclusive presumption* of a gift of *a present beneficial interest* in the deposit, with the right of survivorship that is an incident of a joint tenancy, where words of joint tenancy or joint ownership are employed in the creation of the account. It lays down a rule of evidence rather than of substantive law.

We turn then to the present statutory scheme. *N. J. S. A.* 17:9A–216 deals with the "tentative" or "Totten" trust;

*N. J. S. A.* 17:9A–217 deals with an account in the name of the depositor alone, payable upon his death to the donee; and *N. J. S. A.* 17:9A–218 deals with the joint account with survivorship. *N. J. S. A.* 17:9A–218 reads:

A. When a time or demand deposit account is maintained in a banking institution in the names of 2 persons, payable to either or to the survivor, the banking institution shall pay any moneys to the credit of the account from time to time to, or pursuant to the order of, either of said persons during the lives of both, in the same manner as if the account were in the sole name of such of the 2 persons to whom, or pursuant to whose order, the moneys are paid. Upon the death of the first of the 2 persons to die, the banking institution shall pay the moneys to the credit of the account, less all proper set-offs and charges, to, or pursuant to the order of, the survivor.

B. When either, or both, or only 1 of the 2 persons in whose names a time or demand deposit account is maintained in any form described in this section, makes a deposit or deposits in such account, or causes a deposit or deposits to be made in such account, such persons shall be *conclusively presumed* to intend to vest in the other *a present beneficial interest* in each deposit so made, and in the moneys to the credit of the account from time to time, *to the end that*, upon the death of the first of the 2 persons to die, *all the right and title of the person so dying* in and to the moneys to the credit of the account on his death, less all proper set-offs and charges, *shall, at such death, vest solely and indefeasibly* in the survivor.

\* \* \* \* \* \* \* \*

F. When a time or demand deposit account is maintained in the names of 2 persons in any form described in this section, the right of the survivor of the 2 persons to be vested with sole and indefeasible title to the moneys to the credit of the account on the death of the first of the 2 persons to die, shall not be denied, abridged, or in anywise affected because such right has not been created by a writing executed in accordance with the law of this State prescribing the requirements to effect a valid testamentary disposition of property. (Emphasis added.)

The statute of course was intended to continue to protect the bank as to all payments made pursuant to its terms. But there is no reason to say the Legislature intended to fix the respective rights of the parties to the account during their lives. There was no need for legislative dictation upon that subject. There had been no complaint with the existing case law insofar as the *inter vivos* rights of the parties were

concerned, for the case law carried out the true intention of the depositor. No public interest would have been served by defeating that intent. On the contrary, the Legislature sought to effectuate so much of the depositor's intent as had theretofore been denied by judicial decisions, *i. e.,* that the survivor shall take the balance of the account remaining on the depositor's death. To that end the present statute used language suggested in the cases which had frustrated the donor's purpose to accomplish a gift effective upon death. Thus the words "conclusively presumed" and "a present beneficial interest" which we italicized in subparagraph B were taken from the excerpt quoted above from *Rush.* But the Legislature did not go the length of saying that the "present beneficial interest" thus conclusively presumed was a one-half interest in the account, for that would have defeated a depositor's purpose to be the sole owner during his life. Rather the statute presumed an intent to vest "a present beneficial interest," the dimensions of which are not described, *"to the end"* that the interest of the person who dies first *"shall, at such death, vest solely and indefeasibly in the survivor."*

This critical language was added to this statute by amendment by *L.* 1954, *c.* 209. The Statement annexed to the bill plainly states the single purpose to effectuate a depositor's intention to create a right to take by survivorship. It reads:

> It is the purpose of this bill to provide for survivorship in certain time or demand deposit accounts maintained in banking institutions.
> The courts have held that present law raises only a rebuttable presumption of an intent to create the right of survivorship.
> This bill provides that the presumption of an intent to create the right of survivorship shall be conclusive.

Subparagraph F of the statute, quoted above, emphasizes that purpose by expressly exempting this testamentary disposition from the formal requirements of the statute of wills. There is no suggestion of a purpose to cause the creation of a joint tenancy. Indeed subparagraph F would have been

wholly unnecessary if the statute was meant to say that every such account "conclusively" creates a joint tenancy. This is so because the case law was always clear that if there was a joint tenancy, a right of survivorship existed as an incident of that tenancy and was beyond the formal requirement of the statute of wills. And we note, too, that a companion statute,[1] *L.* 1954, *c.* 208 (*N. J. S. A.* 46:37–1 and 2), which covered the same ground as *c.* 209, was entitled:

> AN ACT to provide that the right of a person to become vested with title to the moneys to the credit of certain bank accounts upon the death of another person shall not be denied or abridged or in anywise affected because such right is not created by a writing executed in accordance with the laws of this State prescribing the requirements to effect a valid testimentary disposition of property.

Again there was no intimation of a purpose to deal with the *inter vivos* rights of the parties to the bank account.

We are therefore satisfied that the statute does not control the *inter vivos* rights of the parties, and hence the depositor may insist, as he could under *Stiles* and *Rush*, that the account remained his sole property, and that his purpose was only to achieve a gift to the donee upon the depositor's death.

 The question then is whether, if the depositor intended only to accomplish a gift effective on his death, he may countermand that testamentary instruction by his last will and testament. On the hypothesis that a joint tenancy

---

[1]Chapter 209 was entitled:

AN ACT to amend "An act concerning banking and banking institutions (Revision of 1948)," approved April 29, 1948 (P. L. 1948, c. 67).

Apparently *c.* 208, adopted simultaneously with *c.* 209, was intended to obviate any constitutional claim that *c.* 209 sought to accomplish a change in the law of wills and failed in that effort because the title of *c.* 209 did not reveal that purpose in its title. See *Howard Savings Institution v. Kielb, supra,* 38 *N. J.* at 201. Both bills were prepared and sponsored by the New Jersey Bankers Association and were introduced by the same Senator.

was not created and that the depositor intended only to achieve a gift effective upon his death, we see no reason why a will, evidencing unequivocally an intent to dispose of the account, should not be honored. The ultimate purpose of the statute is to satisfy the depositor's true intention and not to frustrate it. The statute does not purport to place the bank account beyond the depositor's power to dispose of it by will. The depositor being the sole owner of the account, entitled to withdraw all of it during his lifetime, there is no apparent reason to deny him the power to achieve his final intention by a last will and testament plainly countermanding the testamentary expression in the terms of the bank account.

There can be no doubt that prior to the 1954 statutes, the depositor's last will and testament would have controlled if the account was not held in joint tenancy. The 1954 statutes do not express a purpose to change this rule. Indeed there is some internal evidence in *c*. 209 affirmatively negating such a purpose. Chapter 209 amended "An act concerning banking and banking institutions (Revision of 1948)." The 1948 act dealt with all three modes of disposition of bank accounts upon death, mentioned earlier, *i. e.*, section 216 dealt with the "tentative" or "Totten" trust in which the depositor constitutes himself trustee for the intended beneficiary; section 217 dealt with an account in the depositor's name alone, with a direction to pay to a named survivor; and section 218 dealt with an account in joint names, payable to the survivor. By *L*. 1949, *c*. 286, section 216 was amended to contain the following:

(3) if the beneficiary survives the trustee, the trustee's death shall terminate the trust and any funds then to the credit of the trust and any interest credits shall vest indefeasibly in the beneficiary, notwithstanding any one or more of the following, viz.: declarations by the trustee as to his intention in declaring, creating and maintaining the trust or as to the terms of the trust or other evidence contrary to the trustee's conclusively presumed intention, retention of control by the trustee over the evidence of and the funds of the trust, personal use by the trustee of funds of the trust, lack of notice by the trustee to

the beneficiary as to the creation and maintenance of the trust, *any attempted testamentary disposition by the trustee of funds of the trust*, or any other attempted disposition by the trustee of funds of the trust by gift, assignment, pledge or otherwise. (Italics supplied.)

It is interesting that the depositor's power to dispose of a trust account by will was thus denied, since generally, where a "tentative" trust is permitted, it is held that the trustee's last will and testament will control. Annotation, 38 *A. L. R.* 2d 1243, 1253 (1954). At any rate, the point of immediate significance is that the Legislature did not so restrict the power of the depositor to dispose by will an account within either section 217 or 218. When the banking act was amended in 1954 by *c.* 209, the provision quoted above from the 1949 statute with reference to the "tentative" trust was deleted and replaced by the following (*N. J. S. A.* 17:9A–216) :

(3) if the named person survives the individual depositor, the individual depositor's death shall terminate the trust and any moneys to the credit of the trust, less all proper set-offs and charges, shall vest solely and indefeasibly in the named person, notwithstanding any action by the individual depositor, or any evidence, contrary to or negativing the individual depositor's conclusively presumed intention in declaring, creating and maintaining the trust.

Whether this revised language retains the prior express ban upon testamentary disposition, we need not say.[2] Whatever its scope, no such language was included in the 1954 statute either in section 217 which deals with an account in the depositor's name alone payable on death to a named

---

[2]The same language now appears in *N. J. S. A.* 17:9A–218.2(d) which deals with a "tentative" trust where there are two depositors and the account is payable to either or the survivor, in trust for a named beneficiary. We add that both under this statute, *N. J. S. A.* 17:9A–218.2(a), and also *N. J. S. A.* 17:9A–216(A)(1), it is provided that the trust shall be revocable at will by the individual depositors but only to the extent of withdrawals of, or charges against the moneys to the credit of the trust, made or authorized by the individual depositor during his life. There is no parallel language in section *N. J. S. A.* 17:9A–217 or 218.

beneficiary or in section 218, the section dealing with a joint account with which we are here concerned. The omission so to do in the face of this awareness of the subject arguably suggests the Legislature intended no change in the preexisting rule that the depositor in a joint account who retained sole ownership could dispose of the account by his will.

Accordingly, we are satisfied that the depositor of the joint account, if he is its sole owner, may dispose of it by an explicit provision of his last will and testament, notwithstanding the survivorship terms of the bank account itself. This, of course, in nowise diminishes the protection the statute accords the bank. The bank may honor demands for withdrawal by the survivor in accordance with the terms of the bank account, until put upon actual notice of a contrary testamentary disposition, the survivor being accountable, however, to the party in interest.

## II

It follows that the complaint presents several triable issues. The first is whether the depositor created a joint tenancy in the account with the incidental right of survivorship in the son. As to this, the complaint alleges the mother did not so intend, that the account was for her convenience alone. If that issue is resolved against the son, his estate cannot claim a right of survivorship as a joint tenant. On the other hand, if that issue is resolved in favor of the son, there may be the further question whether the joint tenancy was converted into a tenancy in common or a constructive trust should be imposed because of the alleged wrongful refusal by the son to withdraw the mother's share of the account at her request.

If there was no joint tenancy so that at most the deposit could have accomplished a gift of the account upon the mother's death, then her last will and testament would seem to control. If for some reason not now evident, her

last will is not dispositive, there nonetheless is a triable issue as to whether the son may take as the surviving donee. We said both in *Ward, supra,* 38 *N. J.* at 137, and in *Howard Savings Institution, supra,* 38 *N. J.* at 202, that the beneficiary's claim is open to attack upon equitable grounds such as fraud, duress, undue influence and mistake. Here the complaint charged that no gift was intended, that the printed bank form did not reflect the mother's true intent, and hence there was a mistake in setting forth the true terms of the deposit. There is also a triable issue with respect to whether the son should be declared a constructive trustee because he wrongfully denied the mother her sole right to withdraw the funds as alleged in the complaint, which withdrawal, of course, would have defeated in whole or in part the son's expectancy as beneficiary upon the mother's death.

The judgment is reversed and the matter remanded for further proceedings in accordance with this opinion.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—NONE.