803 A.2d 156

ELLEN LEBITZ–FREEMAN, PLAINTIFF–APPELLANT, v. MARY
ELIZABETH LEBITZ AS EXECUTRIX OF THE ESTATE OF
ALEXANDER LEBITZ, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 29, 2002—Decided August 1, 2002.

Before Judges SKILLMAN, CARCHMAN and WELLS.

*Martin K. Indik,* argued the cause for appellant (*Indik & McNamara,* attorneys; *Carl Dallarda* and *Mr. Indik,* on the brief).

*Larry S. Loigman,* argued the cause for respondent.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This case involves a claim by plaintiff Ellen Lebitz–Freeman to certain securities which her father, Alexander Lebitz, held in a brokerage account at the time of his death. Defendant is the executor of decedent's estate, Mary Elizabeth Lebitz, who is plaintiff's sister.

On March 22, 1997, decedent opened a joint brokerage account at Dean Witter in his and plaintiff's names. Before opening the account, decedent informed his account representative, Jeremiah McNamara, that he was concerned about plaintiff and wanted the securities in his account to pass to her in the event of his death. Consequently, he attempted to open up a trust account with plaintiff as the named beneficiary. However, because decedent did not complete the paperwork required to open the account, McNamara suggested that he create a joint account, with a right of survivorship, to accomplish his purpose. Decedent and plaintiff then signed the Dean Witter form required to open such an account.

After the form was executed, decedent transferred the securities he had previously held in an individual Dean Witter account into the new joint account. The Dean Witter form that decedent and plaintiff signed to open this account provided that either of them could buy or sell securities and receive distributions of

securities or cash "as fully and completely as if he alone were interested in said account, all without notice to the other or others interested in said account."

Decedent maintained sole control over the joint account. He was the only one who communicated with Dean Witter, he received the income from the account and paid the taxes, and the monthly statements were sent to his residence.

On December 9, 1997, after some discord developed between decedent and plaintiff, decedent authorized the transfer of the securities in the Dean Witter account to a joint account at Merrill Lynch. As a matter of office policy, although not a term of the agreement creating the joint account, Dean Witter required both holders of the account to sign the transfer form. To satisfy this requirement, decedent signed his own name and forged plaintiff's name on the form.

Shortly thereafter, on December 29, 1997, decedent transferred all the securities in the joint account to an individual account solely in his name. Decedent's representative testified that decedent told him that he had a number of reasons for transferring those securities from the joint account to an individual account, including that "they were his assets." Similar to Dean Witter, as a matter of office policy although not set forth in the joint account agreement, Merrill Lynch required both holders of a joint account to sign the form required for such a transfer. Decedent again signed his own name and forged plaintiff's name on the transfer form.

Decedent passed away on January 22, 1999. His will, which had been executed on September 9, 1998, was probated in the Monmouth County Surrogate's Office. The will made specific bequests of most of the securities in the Merrill Lynch account to defendant and another daughter, Rosanne Ford. Plaintiff also received certain specific bequests.

Plaintiff subsequently brought this action against her father's estate, alleging that the transfer of the Dean Witter joint account to Merrill Lynch and the subsequent transfer of the securities in

the account into an individual account in decedent's name constituted a "conversion by false pretenses." Plaintiff sought to set aside the transfers and also sought compensatory and punitive damages.

After a bench trial, the trial court concluded in an oral opinion that even though decedent had forged plaintiff's signature on the forms transferring the securities in the joint account from Dean Witter to Merrill Lynch and then into his individual account, those forgeries were "immaterial" to decedent's "right" to those securities. Based on this opinion, the trial court entered judgment dismissing plaintiff's complaint.

Plaintiff's essential argument is that by creating a joint account, with a right of survivorship, decedent made an irrevocable gift to her of a joint interest in the securities, which he converted by forging her name on the forms transferring the account from Dean Witter to Merrill Lynch and then into his individual name.

However, the creation of a joint account, with a right of survivorship, in a bank or other financial institution does not, by itself, constitute an *inter vivos* gift by the party depositing assets into the account to the other named party. *Sadofski v. Williams*, 60 *N.J.* 385, 397–99, 290 *A.2d* 143 (1972); *Bauer v. Crummy*, 56 *N.J.* 400, 410–11, 267 *A.2d* 16 (1970). Instead, our case law recognizes that such accounts are often used as a means of testamentary disposition, commonly referred to as a "poor man's will." [1] *See Sadofski, supra,* 60 *N.J.* at 395, 290 *A.2d* 143. If a joint account, with a right of survivorship, is established for this purpose, the assets in the account remain the sole property of the

---

[1] Such joint accounts are also sometimes created as "convenience accounts" to enable the other named party to pay the depositor's bills and manage his or her finances. *See Sadofski, supra,* 60 *N.J.* at 398–400, 290 *A.2d* 143. When a joint account is created for this purpose, the assets in the account do not pass to the other named party upon the depositor's death. *Id.* at 398–99, 290 *A.2d* 143; *Bronson v. Bronson,* 218 *N.J.Super.* 389, 394–95, 527 *A.2d* 943 (App.Div.1987). There is no suggestion that decedent's intent in opening a joint brokerage account with plaintiff was to create such a convenience account.

depositor during his or her lifetime. *Bauer, supra,* 56 *N.J.* at 410, 267 *A.*2d 16. Moreover, if the depositor's intent is to make a testamentary disposition of the assets in the account, he may countermand that testamentary instruction by will. *Id.* at 410–11, 267 *A.*2d 16. Thus, the determination of ownership of the assets in a joint account turns on whether the depositor's intent in creating the account was to make an *inter vivos* gift or solely to establish a vehicle for testamentary disposition. *Sadofski, supra,* 60 *N.J.* at 398–99, 290 *A.*2d 143; *Bauer, supra,* 56 *N.J.* at 410, 267 *A.*2d 16.

■ "The requisite elements of a valid *inter vivos* gift are ... (1) an unequivocal donative intent on the part of the donor; (2) an actual or symbolical delivery of the subject matter of the gift; and (3) an absolute and irrevocable relinquishment by the donor of ownership and dominion over the subject matter of the gift, at least to the extent practicable or possible, considering the nature of the articles to be given." *In re Dodge,* 50 *N.J.* 192, 216, 234 *A.*2d 65 (1967); *see also Pascale v. Pascale,* 113 *N.J.* 20, 29, 549 *A.*2d 782 (1988). Proof of each of these elements of an *inter vivos* gift must be "clear, cogent, and persuasive." *Czoch v. Freeman,* 317 *N.J.Super.* 273, 284, 721 *A.*2d 1019 (App.Div.) (quoting *Farris v. Farris Eng'g Corp.,* 7 *N.J.* 487, 501, 81 *A.*2d 731 (1951)), *certif. denied,* 161 *N.J.* 149, 735 *A.*2d 574 (1999). Proof of the delivery element may pose conceptual problems when the subject matter is intangible property such as an account in a financial institution. See *Cziger v. Bernstein,* 33 *N.J.Super.* 404, 110 *A.*2d 560 (App.Div. 1954). However, there is no need to explore what evidence would be required for a purported recipient of a joint interest in a brokerage account to satisfy this element, because plaintiff failed to prove the other elements of a valid *inter vivos* gift.

■ Decedent did not "relinquish ownership and dominion" over the securities in the account. The Dean Witter form that decedent and plaintiff executed to create the joint account would have allowed decedent to sell all the securities in the account and direct Dean Witter to distribute the proceeds to him in cash. Further-

more, decedent in fact exercised sole control over the account. He continued to receive all the income from the securities he had deposited in the account and to pay the taxes on that income. He also was the only one who communicated with the brokerage firm, and the monthly account statements were sent to his residence.

Moreover, the evidence would not support a finding that decedent "intended to make a [present] gift" when he created the joint account. Although plaintiff testified that "my father wanted me to be taken care of ... wanted me to have this money[,]" she did not indicate that decedent ever expressed an intent to give her any interest in his securities while he was still alive, and she never took any steps to assert an interest in those securities until his death. Therefore, even disregarding the other evidence that decedent always viewed the securities in the joint account as his own, plaintiff's testimony could not support a finding that decedent intended to make an *inter vivos* gift to her of those securities.

Because decedent did not make an *inter vivos* gift when he created the joint brokerage account and thus continued to be the sole owner of the securities in the account, the trial court correctly concluded that decedent's forgery of plaintiff's name on the forms required to transfer the securities from Dean Witter to Merrill Lynch and then into his individual name was "immaterial." Even if decedent had continued to maintain the joint account at Dean Witter until his death, the disposition of the securities in the account would have been governed by his will rather than by his designation of plaintiff as the joint owner of the account. *Bauer, supra,* 56 *N.J.* at 410–11, 267 *A.*2d 16.

Affirmed.