[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 358 
The complainant-appellant is the residuary legatee and devisee under the will of his foster mother, Mrs. Caroline B.D. Colgate, who died October 5, 1940. The principal defendant-respondent is S. Bayard Colgate, the son of Mrs. Colgate, and the executor of her will and also the trustee under the fifth paragraph of the will of his father, Sidney M. Colgate. The senior Mr. Colgate died November 10, 1930.
By the fifth article of his will, Sidney Colgate bequeathed to Bayard, upon certain trusts "all my shares of stock of Seven Oaks Company, a Delaware corporation, together with any of the furnishings," etc., in the homestead in Orange, known as Seven Oaks. The trusts declared were: To hold during the life of testator's widow, Caroline B.D. Colgate, to collect and pay over the income to her, to provide for the use by her, free from rent of the homestead, and the furnishings thereof. Upon the death of Mrs. Colgate, the trustee was directed to divide the property then constituting the trust fund, including any accumulations thereon, in three equal parts. One part to be paid to Bayard, the other two parts to be added to trusts created for testator's daughters, Mrs. Eagan and Mrs. Taylor, and their issue. Bayard and his two sisters, who are also defendants-respondents, and the issue of the latter, are the residuary legatees under their father's will.
After Bayard Colgate filed in the Orphans' Court his account as executor of his mother's will, which showed her estate was insolvent, the complainant instituted this suit to remove the settlement of the account into Chancery and to establish a liability on the part of Bayard to his mother's estate growing from his administration of the trust under the fifth paragraph. The accounting and all the issues raised on the bill of complaint were heard in the first place by a Master. To his report the plaintiff excepted, but his exceptions were overruled and the judgment was entered from which he appeals. He argues his appeal under nine headings to which we will now turn.
The one source of support for Mrs. Colgate provided by the will of her husband, was income from the capital stock of the *Page 360 
Seven Oaks Company. From the date of testator's death until the death of his widow, the Company declared only one dividend, $20,000, February 10, 1931; but it made advances to Mrs. Colgate from time to time for her living expenses, in all a net sum of $73,249. This sum Bayard, as her executor, repaid to the Company out of her estate after her death. Plaintiff argues: "Advances made by a son-trustee to his mother for her living expenses should be repaid out of future trust income and not by him as executor of her estate."
Although the advances were made by the Company, they may be treated as advances out of the trust corpus by the trustee, since he held all the capital stock and controlled the actions of the Company. If the advances were to be repaid to the trustcorpus out of future trust income, such repayment would necessarily come out of income that belonged in equal thirds to Mrs. Eagan, Mrs. Taylor and Bayard. Whatever may be the responsibility of Bayard, there could be no justification for such a charge against his sisters' income. As between Bayard, trustee, and his sisters as beneficiaries, he is unquestionably responsible for making good the moneys which were advanced to Mrs. Colgate. As between Bayard and his mother, can the advances be considered as gifts by him, or must they be regarded as loans? If the advances had been made out of Bayard's own moneys, his mother might plausibly have thought them to be gifts; but she cannot have thought this, since the fund was not his to give. The payments to Mrs. Colgate were loans to her of trust funds, unauthorized it is true, and her estate is liable to repay the money in the absence of special circumstances, making a demand for the money inequitable. Rest. — Trusts, §§ 254 and 255. No reason appears in the present case for relieving Mrs. Colgate's estate of this liability.
Appellant's Points II and III attack a promissory note signed by Mrs. Colgate for $53,776, part of the sum of $73,249, discussed above. It is immaterial what weight be accorded to the note, since we find that, even had Mrs. Colgate not made the note, Bayard still acted with propriety when he repaid to the Seven Oaks Company, out of her estate, the entire debt of $73,249. *Page 361 
Point IV raises a question of fact: Was the dividend of Seven Oaks Company, which was declared February 10, 1931, actually in the sum of $20,000, or was it a dividend of $200,000? Admittedly only $20,000 was paid, and admittedly the minute of the action of the directors stated the sum to be $200,000. While the minute book is prima facie evidence of the resolution of the directors, it is not conclusive, and parole evidence is admissible to correct or contradict the minutes. Graham v.Fleissner, 107 N.J.L. 278 (E. A. 1931). The Chancery Division's holding that the dividend declared was $20,000 finds ample support in the proofs.
Point V brings up another corporation, the Beechwood Security Company, which was wholly owned by Mr. Colgate at the time of his death, and the stock of which formed part of his residuary estate. Within six months or so after his decease, it became apparent that the Seven Oaks Company would be unable to yield the very substantial income that the Colgate family considered Mrs. Colgate should enjoy. So under the guidance of Mr. Albert C. Wall, the family solicitor and a very distinguished member of the bar, the Beechwood Trust, so-called, was created. The Beechwood Security Company, which theretofore had outstanding only one class of stock, now issued new stock with a preferred dividend of $75,000 a year. The three Colgate children agreed with their mother that this stock should be transferred to a trustee for her benefit for life, and this was done. During the depression years, 1931 to 1940, in which the Beechwood Trust operated, the stock did not earn or pay the full yearly dividends of $75,000, but it did pay to Mrs. Colgate an average dividend of $42,666. Appellant argues that Bayard and his sisters, by the trust agreement, promised that the dividends would be $75,000 a year and appellant contends that Bayard should be held liable for so much as remained unpaid, to wit, $299,088. The agreement will not bear this construction. While it recites that its purpose was to provide income for Mrs. Colgate approximately in the sum of $75,000 per annum, the children did not guaranty that this goal would be achieved. The parties agreed on certain means to the desired end. *Page 362 
namely, the transfer of the stock to the trustee, and the payment to Mrs. Colgate of the income thereon "as an offset to the loss of income under the Seven Oaks trust." There is no lack of harmony between the recital and the operating parts of the agreement and no ambiguity in either. The operating part governs and measures the rights of the parties. Bellisfield v.Holcombe, 102 N.J. Eq. 20 (Walker, C., 1927). The covenants of the children and of the trustee were fully carried into execution. Although the results were not equal to the hopes or expectations of the parties, that circumstance does place on Bayard a further burden and one that he never agreed to assume.
Points VI, VII and VIII are too general to require consideration by the court. I quote them:
"The son-trustee, in dealing with family corporations, estates and trusts, where his interest conflicted with that of his mother, was guilty of misfeasance, malfeasance and nonfeasance.
"The findings as to the other disallowed exceptions were contrary to the law and the weight of the evidence.
"The findings objected to, being contrary to the weight of the evidence, should be reversed by this court and new findings made.
Under our present system of appeals, the brief of the appellant, besides containing his argument, takes the place of the assignments of error and specification of causes for reversal. Rules 1:2-8 and 1:3-2(e). The appellate court is under no duty to search the record for error; it is the function of counsel by the brief to call the court's attention to the errors by which his client is aggrieved, to set forth specifically the judicial action complained of. Booth v.Keegan, 108 N.J.L. 538 (E. A. 1931); Spatlizzi v. StarAuto Truck Exchange, 119 N.J.L. 377 (E. A. 1937). No technical nicety is necessary, but the brief must bring clearly to the attention of the appellate court each ruling of the trial court to which appellant objects, and the reasons for his objection.
While we feel under no obligation to consider Points VI, VII and VIII, because of their generality, we have studied the case as a whole and have observed no evidence of misconduct on the part of the trustee. *Page 363 
The last point is that appellant should not have been charged with costs and should have been awarded a counsel fee out of the estate, inasmuch as a considerable number of his exceptions to the account of Mrs. Colgate's estate were sustained by the Master in the Chancery Division. The account showed gross assets of $112,482, exclusive of Mrs. Colgate's camp in the Adirondacks that she devised to her three children; it showed debts (including interest) and expenses of $143,669. The Master disallowed interest payable by the estate of Mrs. Colgate to the estate of her husband, or to the Seven Oaks Company, $39,648, against which is offset a resulting item of $14,656 due to the Collector of Internal Revenue. The Master also disallowed expenses for the preservation of the camp, $5,317, and miscellaneous items of $849. As the estate — excluding the camp — remains insufficient to pay debts, the appellant who is residuary legatee, gains nothing by the litigation. The disallowance of the interest and camp items profits no one: It cuts down the amount the children receive as remaindermen of their father's estate or devisees of the camp; and it also cuts down equally the amount they, or their camp, are answerable for. But the litigation has caused all parties much expense. The Judge of the Chancery Division was well within the bounds of his discretion in assessing the taxed costs against appellant and leaving all the parties to pay their own counsel.
The judgment will be affirmed, with costs. *Page 364