STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
STEPHEN H. MARCHESE, DEFENDANT-APPELLANT.

Argued November 9, 1953—Decided December 7, 1953.

*Mr. Albert S. Gross* argued the cause for the appellant.

Mr. David H. Harris, Special Deputy Attorney-General, argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney-General, Mr. Albert M. Ash, Deputy Attorney-General, of counsel).

The opinion of the court was delivered by

VANDERBILT, C. J.   The defendant, a former lieutenant and later a captain in the Lodi police force, was convicted in the Law Division of the Superior Court on two indictments charging him with malfeasance in office in failing to use "all proper, reasonable and effective means and all lawful means within his power and diligence for the detection, apprehension, arrest and conviction" of persons conducting gambling activities.   The first indictment was concerned with activities between November 30, 1949 and May 1, 1950, at 172 North Main Street, while the second indictment dealt with activities at 244 Harrison Avenue, from January 1, 1948 to June 1, 1950.   The defendant appealed from the judgment of conviction and we certified the appeal on our own motion while it was still pending in the Appellate Division of the Superior Court.

The defendant urges several grounds of reversal:

1. The defendant attacks both indictments as "invalid for failure to allege crimes against the state, and for ambiguity."   He claims that no corrupt purpose or evil design is alleged or proved, the indictment merely stating that the defendant "wilfully, continuously, unlawfully and by design" failed to perform his duty.   This precise contention was answered at length in State v. Winne, 12 N. J. 152 (1953); the language of the indictments is sufficient.

The defendant further contends that in charging him with the duty of "detection, apprehension, arrest and conviction" the indictments burden him with the task of obtaining a conviction, which is part of the duty of the county prosecutor and the grand jury.   Although a police officer does not himself present the evidence to the grand jury, everything he does in the way of detecting crime, signing complaints, making arrests, gathering evidence and the like, is

with a view to obtaining the conviction of the guilty party. The indictments here do not place upon the defendant the burden of obtaining convictions. The essence of the charge is nonfeasance in office. The defendant did nothing and in fact admits that he did nothing. His only defense is a lack of knowledge of the crimes. At the worst the word "conviction" in the indictments is mere surplusage.

Nor is the charge of the duty to use "proper, reasonable, and effective means" ambiguous, as the defendant contends; see *State v. Donovan*, 132 *N. J. L.* 319 (*Sup. Ct.* 1945); *State v. McFeeley*, 136 *N. J. L.* 102 (*Sup. Ct.* 1947); and *State v. Winne, supra*.

2. The defendant claims that the first count of the second indictment returned on September 16, 1952 is barred by the statute of limitations and that therefore the trial court erred in denying his motion to dismiss this count. The count charges that "on or about September 1, 1947, to and including May 1, 1950" the defendant was a police lieutenant and that as such he failed to investigate and arrest those who were to his knowledge breaking the law between January 1, 1948 and June 1, 1950, at 244 Harrison Avenue, Lodi. Prior to the trial the defendant moved to dismiss the indictment, because on its face it appeared to be barred by the statute of limitations in that it was returned on September 16, 1952, more than two years after the last date on which it was alleged in this count of the indictment that the defendant was a public official.

At the beginning of the trial, however, it was stipulated in open court that the defendant was still a police officer of the Borough of Lodi, although under suspension since June 21, 1951. This stipulation would, of course, serve to remove any possible defect in the indictment through the mistaken use of May 1, 1950, as the terminal date of his public employment. Although good practice would dictate that the State move to amend the indictment to conform to the stipulation, its failure to do so is not fatal. The parties proceeded to trial under the stipulation and the defendant never renewed his motion for dismissal of the indictment on

this ground. Whatever defect existed in the indictment was cured by the stipulation. Under *R. R.* 1:5–1(*b*) (formerly *Rule* 1:2–19(*b*)) which provides that

"No judgment given upon any indictment shall be reversed for any imperfection, omission, defect or lack of form, or for any error except such as shall have prejudiced the defendant in maintaining his defense upon the merits."

we find no error in the trial court's ruling. See also *State v. McFeeley*, 136 *N. J. L.* 102, *supra*, at *p.* 106, where the former Supreme Court held that the statute of limitations did not begin to run in favor of a police officer until the statute had run against the offenders he should have prosecuted "provided, of course, the officer retains his public position that long." See also *State v. Weleck*, 10 *N. J.* 355 (1952), at *page* 374. Here, as we have just seen, it was stipulated that the defendant was still in office at the time of the trial.

3. The defendant urges that the trial court erred in dismissing a prospective juror for cause on the State's motion, when he stated

"I am afraid, your Honor, that my knowledge of the particular leases that the prosecuting attorney has spoken about would influence me to the extent that I may become biased as to the evidence presented."

It seems that he was an employee of the Western Union Telegraph Company and had worked with its legal department in the preparation of *State v. Western Union Telegraph Company*, 13 *N. J. Super.* 172 (*Cty. Ct.* 1951), affirmed 12 *N. J.* 468 (1953), and on other cases involving gambling. There is no merit to the defendant's contention, for "the right of challenge is one of exclusion and not one of selection." *State v. Calabrese*, 107 *N. J. L.* 115, 118 (*E. & A.* 1930). Moreover, defendant entered no objection to the challenge after the trial court's ruling, and at the conclusion of the selection of the jurors the defendant, by his counsel, stated that the jury was satisfactory to him.

4. The defendant argues that his motion for judgment of acquittal should have been granted at the end of the State's case and also that the verdict was against the weight of the evidence. It was admitted that there was gambling at both locations named in the indictments, the only question being whether the defendant had knowledge thereof. It is not necessary to summarize all the evidence. Suffice it to say as to 172 North Main Street mentioned in the first indictment that the testimony showed that the defendant was an active co-owner of the building and that he met periodically with the other two owners regarding maintenance, rentals, and the like. He often endorsed and cashed rent checks. A $2,000 ticker tape machine had been installed on the premises and a telephone line had been illegally tapped into an apartment. With respect to 244 Harrison Avenue, the evidence clearly showed that the defendant's nephew owned the building and that the defendant's former telephone number was illegally tapped into the building and used for gambling purposes. In September 1948 a detective from the county prosecutor's office interviewed the defendant and told him that the Attorney-General had received information that the new telephone number listed in defendant's name was also being used for gambling purposes. The defendant admitted that this number had only recently been transferred from 244 Harrison Avenue but he professed to be unable to understand how it was being used for gambling purposes. Telephone refund checks to tenants at 244 Harrison Avenue were endorsed by the defendant and various fuel bills for the property were paid by him. With all of this proof in evidence the trial judge did not err in denying the defendant's motion for judgment of acquittal, nor was the verdict of the jury against the weight of the evidence; see *State v. Witte*, 13 *N. J.* 598 (1953).

5. The defendant insists that the testimony of five witnesses dealing with illegal telephone wires, ticker tape machines and the like, was improperly admitted in evidence. This testimony was introduced to show the existence of gambling activity and defendant's knowledge thereof, the

latter being the only real point in issue in the case, and it clearly was admissible for this purpose. Nowhere, moreover, in his brief does the defendant specify what the objectionable features of the testimony of the five witnesses are and where they are to be found in the record. It is not the duty of a reviewing court to search the record for error, *State v. Cooper,* 10 *N. J.* 532, at 563 (1952), citing *Shade v. Colgate,* 4 *N. J. Super.* 356 (*App. Div.* 1949), where it is said at *page* 362:

"Under our present system of appeals, the brief of the appellant, besides containing his argument, takes the place of the assignments of error and specification of causes for reversal. Rules 1:2–8 and 1:3–2(e). The appellate court is under no duty to search the record for error; it is the function of counsel by the brief to call the court's attention to the errors by which his client is aggrieved, to set forth specifically the judicial action complained of."

6. Finally the defendant objects to the admission of testimony by one Frank Paparozzi over Paparozzi's plea of self-incrimination, but only the witness and not the defendant had a right to assert this privilege, *Phleps v. Phleps,* 133 *N. J. Eq.* 392, 396 (*E. & A.* 1943). Moreover, here again the defendant made no objection to this testimony at the time that it was given.

Finding no error, we affirm the judgment below.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.