**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1325-17T4

G.F.B., an Infant, by her Guardians
Ad Litem, G.B. and H.E., and G.B.
and H.E., Individually,

     Plaintiffs-Appellants,

v.

SAINT JAMES SCHOOL, DIOCESE OF
METUCHEN, FRANCIS COMISKEY,
MARY ERATH, PAMELA HUFCUT,
MELISSA MCDONALD, and JESSICA
WECHSLER,

     Defendants-Respondents,

and

an Infant A.L., an Infant, D.D., an Infant,
J.G., an Infant L.K., an Infant, M.J., and
an Infant, N.H.,

     Defendants.

_____

Submitted September 16, 2019 – Decided December 24, 2019

Before Judges Messano, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6697-15.

Gwendolyn O. Austin, attorney for appellants.

Di Francesco Bateman, attorneys for respondents (Lisa Marie Fittipaldi and Robert Philip Manetta, on the brief).

PER CURIAM

Plaintiffs G.F.B., a minor, and her father G.B. and mother H.E., individually and as G.F.B.'s guardians ad litem, filed a ten-count complaint against defendants Saint James School (St. James), the Diocese of Metuchen (the Diocese), and St. James' employees Francis Comiskey, Mary Erath, Pamela Hufcut, Melissa McDonald, and Jessica Wechsler (collectively "defendants") alleging they engaged in, and allowed: racial, sexual, and religious discrimination; harassment; bullying; and physical assaults against G.F.B. during her attendance at the school. The court granted defendants' partial summary judgment dismissing eight of the ten counts (counts one, two, four, five, six, seven, nine, and ten), but denied the motion as to the other two counts (counts three and eight). The court later granted defendants' reconsideration motion and entered summary judgment in defendants' favor on counts three and eight.

A-1325-17T4

Plaintiffs do not appeal from the court's initial order awarding partial summary judgment as to the eight counts. Instead, plaintiffs appeal from the order granting defendants' reconsideration motion and dismissing counts three and eight of the complaint, and from an order denying their motion for reconsideration of the court's order granting defendants' summary judgment on the eight counts and denying their motion to amend their complaint. Having carefully considered the record in light of the applicable law, we affirm.

I.

We discern the following undisputed facts from the parties' Rule 4:46-2 submissions that were filed in connection with defendants' summary judgment motion. St. James is a private school G.F.B. attended during the school years commencing in September 2008, when she entered kindergarten, through June 2015, when she completed sixth grade. St. James' mission statement is "to provide a quality Catholic education in a safe, diverse, and nurturing environment."

G.B. is a non-practicing Catholic, and H.E. is a practicing Muslim. G.B. and H.E. enrolled G.F.B. in St. James' "non-Catholic curriculum." G.F.B. practiced Islam in the past with her mother, but she "fell in love with the concept of Catholicism" while attending St. James.

Although G.F.B. was enrolled in the school's non-Catholic curriculum, there was an apparent error and the school confused G.F.B. with a Catholic student with the same first name who had withdrawn. G.B. testified he did not know when G.F.B. began receiving religious instruction at St. James, but "he had no objection to it," and H.E. said she "didn't like it," but "accepted it" because her "kid loved it."

G.F.B. did not report any incidents at the school while in kindergarten, first, or third grade, and her complaint is not founded on any alleged incidents that occurred during those school years. According to H.E., during G.F.B.'s second grade school year, her teacher, defendant Jessica Wechsler, told G.F.B. she did not need to practice for her First Communion because G.F.B. was not Catholic.

While at school, G.F.B. accepted ashes on Ash Wednesday[1] each year until the fourth grade. In February 2013, G.F.B.'s fourth grade teacher, defendant Melissa McDonald, told a priest that G.F.B. was not Catholic and therefore should not receive ashes. G.F.B. also asserted that a minor child, N.H., called her a "terrorist" and "the devil's child." G.F.B. certified that she reported

---

[1] Ash Wednesday is the first day of Lent. Ash Wednesday, MERRIAM-WEBSTER DICTIONARY, https://merriam-webster.com/dictionary/ash%20wednesday (last visited Dec. 3, 2019).

the incident to McDonald, who questioned N.H. and accepted his explanation that G.F.B. utilized the terms to refer to herself. H.E. asserted that she forwarded a letter written by G.F.B. to St. James' then principal, defendant Mary Erath, concerning the incident, and that Erath assured her the incident would be addressed. H.E. is unaware if anything was done in response to G.F.B.'s letter.

More than one year later, on April 10, 2014, while G.F.B. was in fifth grade, minor students "N.H., D.D., and J.G. allegedly grabbed the carrots [G.F.B.] was eating, threw them at her, kicked her, and accused her of eating a boy's ****" and of having sex with another boy in class. H.E. reported the incident to Erath, who reprimanded the three students. Plaintiffs made no other complaints to the school or otherwise about these minor students.

During G.F.B.'s sixth grade school year, on January 6, 2015, minor student M.J. pulled a chair from behind G.F.B. as she was about to sit in it. The substitute teacher that day sent M.J. to the principal's office. The next day, M.J. snatched a ball from G.F.B. during a game of "wall ball" and later snatched a computer from G.F.B. in Robotics Club. H.E. emailed St. James's new principal, defendant Francis Comiskey, regarding the January 7, 2015 incidents. Comiskey reviewed M.J.'s behavior toward G.F.B. and suspended M.J. for three days. H.E. testified when she asked Comiskey how the incident was handled,

Comiskey said she could not discuss other students, but that the incidents had been addressed. H.E. stated she believed M.J. received a suspension on paper, but that he actually returned to class. Plaintiffs made no other complaints about M.J.

Six months later, G.F.B.'s teacher, defendant Pamela Hufcut, told G.F.B. to "try her best" to answer questions during a "religious game." The parties dispute whether Hufcut said "if [G.F.B.] did not know the answer to try her best" or that "because G.F.B. was not Catholic she was not expected to know any of the answers but that she should 'try her best.'" G.F.B. received tutoring in sixth grade from Hufcut, going voluntarily during recess.

Plaintiffs also alleged that a minor student, A.L. called G.F.B. a "slut." The incident was reported to Comiskey who stated she took action in response to the complaint. G.F.B. certified that she was called to Comiskey's office and, in front of a minor student, L.K., Comiskey said G.F.B. was "causing trouble for [her]self." G.F.B. further certified that L.K. circulated a list that was signed by sixth grade classmates indicating they did not want to be friends with G.F.B.

G.F.B. did not receive any negative comments from her teachers on her report cards, and her grades were consistently in the A and B range. The only negative comment made by G.F.B.'s teachers was that she was "talkative."

There were several issues in G.F.B.'s home life during the period she attended St. James. They revolved around G.B.'s alcoholism, G.B.'s physical abuse of H.E., G.B.'s stays in a rehabilitation center in Florida and relapses, and a sexual harassment suit brought by H.E. against her and G.B.'s supervisor at work. G.F.B. attended therapy sessions in 2016 and 2017, during which she often discussed G.B.'s alcoholism. Plaintiffs submitted medical records from three psychiatrists who diagnosed G.F.B. with post traumatic stress disorder (PTSD) and major depression, which they in part attributed to the events at St. James. Plaintiffs claim G.F.B. continues to experience nightmares, PTSD, and depression symptoms from her experiences at St. James.

In November 2015, plaintiffs filed a ten-count complaint against St. James; the Diocese; principals Erath and Comiskey; teachers Wechsler, McDonald and Hufcut; and minor students A.L., D.D., J.G., L.K., M.J., and N.H.[2] Count one alleged St. James and the Diocese were careless, reckless, and negligent by failing to maintain St. James' premises in a safe condition and by failing to protect G.F.B. from alleged bullying, harassment, and sexual and religious discrimination. Count two alleged St. James and the Diocese

_____

[2] It appears the minor students were never served with the complaint, were not involved in the motions for summary judgment and reconsideration, and are not parties to the appeal.

A-1325-17T4

negligently supervised the principal and teacher defendants and count three alleged those individual defendants negligently supervised the minor children defendants. Count four alleged St. James and the Diocese are legally responsible for the actions of the minor defendants. Count five alleged St. James and the Diocese violated the New Jersey Anti-Bullying Bill of Rights Act, N.J.S.A. 18A:37-13 to -37. Count six incorporated the allegations of the first five counts and alleged that St. James, the Diocese, and the principal and teacher defendants violated law and public policy. Count seven alleged G.B. and H.E. incurred medical care and expenses as a result of G.F.B.'s alleged injuries. Count eight alleged that, as a result of the negligence of St. James, the Diocese, and the principal and teacher defendants, G.B. and H.E. suffered emotional distress. Count nine alleged that the negligence of St. James, the Diocese and the principal and teacher defendants caused G.B. and H.E. to suffer the loss of G.F.B.'s services. Count ten alleged St. James and the Diocese breached a contract by failing to provide G.F.B. with a safe and secure environment.

Following almost two years of discovery, defendants moved for summary judgment. Based on the parties' respective submissions, the court partially granted defendants' summary judgment and dismissed counts one, two, four, five, six, seven, nine, and ten. The court denied defendants' motion as to count

three, finding that it alleged a cause of action for negligence by breaching the duty of care owed to G.F.B., and that defendants had not demonstrated they were entitled to judgment as a matter of law on that claim. The court also denied summary judgment on count eight, finding there was sufficient evidence, even without expert testimony, showing G.B. and H.E. suffered emotional distress.

Defendants subsequently filed a motion for reconsideration of the court's denial of their motion for summary judgment on counts three and eight. The court granted the motion, finding that the counts alleged negligence claims that are barred by the Charitable Immunity Act, see N.J.S.A. 2A:53A-7, and that plaintiffs failed to present sufficient evidence establishing the alleged conduct of defendants "rises to the level necessary for negligent infliction of emotional distress."

The court denied plaintiffs' motion for reconsideration of the order granting summary judgment as to counts one, two, four, five, six, seven, nine, and ten, finding "there really is nothing different in the arguments than those that were made [by plaintiffs] earlier," when the court decided the summary judgment motion. The court noted plaintiffs did not present any "new evidence." The court denied plaintiffs' request to amend the complaint to add a claim for

intentional infliction of emotional distress, concluding that it was not convinced the claim was actionable based on the evidence presented.

The court entered orders granting defendants' motion for reconsideration, dismissing counts three and eight, and denying plaintiffs' motion for reconsideration and to amend the complaint. This appeal followed.

On appeal, plaintiffs present the following arguments for our consideration:

POINT ONE

THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND LEAVE TO AMEND[.]

POINT TWO

THE TRIAL COURT ERRED IN DISMISSING COUNTS THREE AND EIGHT OF THE COMPLAINT ABSENT CONCLUSIVE EVIDENCE DEFENDANTS RESPONDED TO PLAINTIFFS' CONCERNS[.]

POINT THREE

THE TRIAL COURT ERRED IN DISMISSING COUNT TEN OF THE COMPLAINT AS TO ST. JAMES SCHOOL[.]

POINT FOUR

THE TRIAL COURT ERRED IN DISMISSING COUNT FIVE OF THE COMPLAINT AS TO THE DIOCESE OF METUCHEN[.]

POINT FIVE

THE TRIAL COURT ERRED IN FINDING THAT DEFENDANTS' ACTIONS AND INACTIONS FELL WITHIN THE STATUTORY DEFENSE OF CHARITABLE IMMUNITY[.]

II.

We consider only those orders from which an appeal is taken. Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 460-62 (App. Div. 2002). Here, plaintiffs appeal solely from the orders granting defendants' reconsideration motion, denying plaintiffs' reconsideration motion, and denying plaintiffs' motion to amend the complaint. They do not appeal from the court's order granting defendants' summary judgment dismissing counts one, two, four, five, six, seven, nine, and ten. We therefore limit our review to defendants' challenge to the orders on the reconsideration motions, and to plaintiffs' motion for leave to amend the complaint.

"Motions for reconsideration are granted only under very narrow circumstances . . . ." Fusco, 349 N.J. Super. at 462. A motion for reconsideration "should be utilized only for those cases . . . in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or

11

irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (citation omitted).

This court will not disturb a motion judge's determination on a motion for reconsideration absent a clear abuse of discretion. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). An "abuse of discretion only arises on demonstration of 'manifest error or injustice.'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)). A manifest error or injustice occurs when the motion judge's decision is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Plaintiff first argues the court erred by initially granting defendants' partial summary judgment on eight counts of the complaint[3] because it either was not provided with, or did not consider, documents submitted in opposition to the motion. More particularly, plaintiffs claim the court considered only "28

_____

[3] As noted, the court initially granted defendants summary judgment on counts one, two, four, five, six, seven, nine, and ten.

pages of [p]laintiffs' 701-page submission in opposition to [d]efendants' motion for summary judgment."[4]  In the first instance, we reject the argument because it challenges the order granting partial summary judgment on the eight counts that plaintiffs chose not to appeal.  See Fusco, 349 N.J. Super. at 460-62.  We also reject the argument because plaintiffs fail to present any record evidence establishing that the court was either not provided with, or did not consider, all of plaintiffs' submissions in opposition to the summary judgment motion.  The claim is untethered to any citation to the record, see R. 2:6-2(a)(5), and our review of the record does not disclose any evidence that the court was not provided with, or failed to consider, all of plaintiffs' submissions in opposition to the summary judgment motion.

Plaintiffs also do not identify the documents they contend comprised the 701 pages of their opposition to the summary judgment motion and which of those pages were not provided to, or not considered by, the motion court. Indeed, plaintiffs' appendix on appeal could not include the purported 701 pages of alleged submissions in opposition to the summary judgment motion; the

---

[4]  Plaintiffs' preliminary statement in its initial brief on appeal generally describes the filing of their "701-page opposition to [d]efendants' motion for summary judgment" and a conclusory assertion that the court only considered "28 pages" of the opposition, but the assertions are unsupported by citation to any competent record evidence.

appendix on appeal consists of only 740 pages, more than 39 of which consist of court orders, the parties' pleadings, exhibit tabs, and other documents that are unrelated to any opposition to the summary judgment motion. It is not this court's role to mine a voluminous record to discover competent evidence supporting a party's factual assertions. See State v. Marchese, 14 N.J. 16, 22-23 (1953). An appellant bears the burden of providing competent evidence in the record establishing the facts upon which a claim is based. See, e.g., State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (noting that "[o]ur rules clearly impose upon the attorneys for the parties to the appeal the absolute duty to make unnecessary an independent examination of the record by the court"). Plaintiffs have not done so here.

In any event, it appears that plaintiffs claim the court did not have available, or did not consider, plaintiffs' counsel's certification in opposition to the summary judgment motion, and the thirteen exhibits to which the certification makes reference. We reach that conclusion based on plaintiffs' counsel's other certification, submitted in support of their reconsideration motion, that vaguely refers to the "Gwendolyn O. Austin, Esq. Certification missing in the case jacket from Plaintiff's Opposition to Defendants' Motion for Summary Judgment." (Emphasis added). Our difficulty in ascertaining the

14

purported factual basis for plaintiffs' argument, however, is exacerbated by plaintiffs' failure to include in the appendix the exhibits referenced in the certifications from their counsel submitted on the summary judgment and reconsideration motions.  See R. 2:5-4(a) ("The record on appeal shall consist of all papers on file in the court . . . below . . . ."); R. 2:6-1(a)(1) (requiring that the record on appeal include "such . . . parts of the record, excluding the stenographic transcript, as are essential to the proper consideration of the issues").  We therefore lack any competent evidence permitting a conclusion that the court was either not provided with, or did not consider, all of plaintiffs' submissions when it decided the summary judgment motion.

Plaintiffs also make no showing that any purported failure of the motion court to consider all of the documents plaintiffs allege were either not provided to, or were not considered by, the court resulted in a palpably incorrect decision to grant defendants' partial summary judgment.  See Palombi, 414 N.J. Super. at 288.  Absent such a showing, we conclude the court correctly denied plaintiffs' motion for reconsideration.  Ibid.

Plaintiffs also contend the court erred by dismissing count ten of the complaint, which alleges that St. James and the Diocese breached a contract with G.B. and H.E. by failing to provide a nurturing environment to G.F.B., by failing

to take steps to remediate the bullying, physical assaults, sexual harassment and discrimination against G.F.B., and by failing to notify the appropriate authority after becoming constructively aware that violations of New Jersey Anti-Bullying Bill of Rights Act, occurred at St. James. Plaintiffs also argue defendants failed to produce various documents during discovery related to anti-bullying policies, and that the record shows St. James and the Diocese breached a contractual duty owed to plaintiffs.

Again, plaintiffs' arguments are exclusively directed to the court's order granting summary judgment dismissing count ten, but plaintiffs do not appeal from that order. Plaintiffs argue St. James and the Diocese failed to take action in response to alleged violations of the New Jersey Anti-Bullying Bill of Rights Act, but ignore it is inapplicable to St. James, which is a private school. See N.J.S.A. 18A:37-13.15(a) (requiring that public "school district[s] shall adopt [] policie[s] prohibiting harassment, intimidation or bullying").

Plaintiffs' argument consists of a rehash of the facts they contend show St. James and the Diocese allegedly breached a contractual obligation to G.B. and H.E., but it does not demonstrate that the court erred by denying their motion for reconsideration of the order granting summary judgment on count ten. Indeed, plaintiffs offer no argument directed to the reconsideration standard.

16

See Palombi, 414 N.J. Super. at 288.  Plaintiffs otherwise fail to establish the court abused its discretion by failing to find its grant of summary judgment on count ten was founded on a palpably incorrect or irrational basis or that the court failed to consider competent evidence.  See ibid.

Plaintiffs' claim the court erred by dismissing count five as to the Diocese is without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We note only that the argument again is directed to the court's summary judgment order, which is not the subject of this appeal, and fails to address the reconsideration standard.  Moreover, count five asserts a claim against the Diocese for violation of the New Jersey Anti-Bullying Bill of Rights Act, which, as noted, is not applicable to the Diocese because it is not a public school district.  See N.J.S.A. 18A:37-13.15(a).  Plaintiffs' attempt to seek refuge from the inapplicability of the Anti-Bullying Bill of Rights Act in the anti-bullying policy of another Catholic school in the Diocese is without merit for two reasons: first, plaintiff did not present the policy to the court in opposition to defendants' summary judgment motion, see, e.g., Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (explaining that a motion for reconsideration "cannot be used to expand the record and

reargue a motion"); and second, the policy has no application to St. James, the school G.F.B. attended.

Plaintiffs also claim the court erred by finding their negligence claims were barred by Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -12. Plaintiffs concede the Act otherwise bars claims of simple negligence against St. James and the Diocese, see N.J.S.A. 2A:53A-7, but contend their claims are for gross negligence and intentional and willful conduct, and thus are not barred by the Act, see N.J.S.A. 2A:53A-7(c). We are not persuaded by plaintiffs' argument because the record is bereft of evidence upon which a reasonable jury could conclude that St. James, the Diocese, or individual adult defendants acted with gross negligence, or intentionally or willfully acted, to harass, discriminate against, or bully G.F.B. To the contrary, and as the motion court found, defendants immediately responded to G.F.B.'s limited, separate, and isolated reports of harassment and bullying by her very young classmates over the seven years she attended the school, and they took action to ensure the involved classmates did not repeat their behavior. We agree with the motion court that plaintiffs failed to present evidence defendants willfully, wantonly, or intentionally violated any duty owed to plaintiffs, and, as a result, plaintiffs' negligence claims are barred by the Charitable Immunity Act.

We last address plaintiffs' contention the court erred by denying their motion for leave to amend count ten to assert a claim against St. James and the Diocese for intentional infliction of emotional distress. The court denied the motion, finding "no new evidence [was] put forward" that would sustain a claim of intentional infliction of emotional distress against St. James and the Diocese.

Rule 4:9-1 provides that, after a responsive pleading is served, "a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice." A determination of motion for leave "to file an amended complaint always rests in the court's sound discretion." Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 454 (1998). However, the court's exercise of discretion in permitting or denying an amended complaint "requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006).

Courts properly deny motions for leave to amend when the proposed new claim is not sustainable as a matter of law, and in fact, a late motion for leave to amend coupled with an apparent lack of merit all but requires denial of same. Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 197 (App.

Div. 2006). Here, the motion court found plaintiffs' proposed amendment to the complaint was not sustainable as a matter of law because it simply repackaged the facts upon which the court granted defendants' partial summary judgment. Moreover, the motion was made returnable after two years of discovery, within a few weeks of the November 2017 scheduled trial, and only after partial summary judgment had been granted. Plaintiffs fail to demonstrate how the court's denial of a late-filed motion for leave to amend the complaint to include facts that the court had already found, in its summary judgment decision, to be inadequate to support a cause of action constitutes an "abuse of discretion" or a "manifest error or injustice." Hisenaj, 194 N.J. at 20 (quoting Torres, 183 N.J. at 572).

We do not consider or decide plaintiffs' claim, raised in Point Three of their brief, that the court erred by dismissing counts three and eight based on a purported failure of defendants to produce disciplinary records related to actions taken against the students that allegedly bullied and harassed G.F.B. As plaintiffs acknowledge, the argument was not raised before the motion court, and it does not pertain to jurisdiction or a matter of public concern. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Any of plaintiffs' arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1325-17T4